GEORGE B. MORE et al., Respondents, *v.* NEW YORK BOWERY FIRE INSURANCE COMPANY, Appellant.

The mere failure of a fire insurance company to respond to an application for insurance does not raise an inference that it has accepted it and insured the risk.

To bind the company there must be actual acceptance.

Silence operates as an assent and creates an estoppel only where it has the effect to mislead.

In an action upon an alleged parol contract of insurance it appeared that S., the general agent of defendant, sent blank applications to N., with instructions that in case he secured business for defendant to fill out an application and forward to him (S.). N., on May twelfth, as a result of negotiations with plaintiffs, filled out an application and forwarded it to S. Plaintiffs were informed by N. that he could not issue a policy, and before one could be issued the application would have to be approved by some other person. S., on receiving the application, wrote to N. that the risk being special he did not wish to write it without submitting it to the company. On the same day S. wrote defendant, stating the application and the nature of the risk. Defendant, on receipt, immediately replied rejecting the application. Of this action S. neglected to notify plaintiffs or N. Plaintiffs, on May thirtieth, sent a check to N. for the premium agreed upon, which the latter received, but did not remit to S. or defendant, and it did not appear they had any knowledge of the payment. A day or two thereafter N. told plaintiffs that he had heard nothing from the company, and consequently it was all right, and they would get the policy in a day or two. The property was destroyed by fire on June sixth. *Held,* that defendant was not liable; that N. having to plaintiffs' knowledge no authority to contract, could not bind defend-

ant by acceptance of the premium or by his conclusion drawn from its failure to report its action upon the application.

*Bodine* v. *E. F. Ins. Co.* (51 N. Y. 117); *Arff* v. *S. F. Ins. Co.* (125 id. 57, 64), distinguished.

*More* v. *N. Y. B. F. Ins. Co.* (55 Hun, 540), reversed.

(Argued December 21, 1891; decided January 26, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made February 11, 1890, which affirmed a judgment in favor of plaintiffs, entered upon the report of a referee.

This action was brought to recover upon an alleged parol contract to insure the plaintiff's creamery building in Delaware county for the term of six months from May 12 to November 12, 1887. The defendant denied the making of the contract.

It appeared that Omar V. Sage was the secretary of the Co-operative Insurance Company, a corporation engaged in the insurance business in the counties of Green, Schoharie and Delaware, and issuing policies limited in amount to $2,500.

For the purpose of dividing risks where the value of the property on which the insurance was sought exceeded that amount he requested to be and was appointed agent for the defendant company. As such agent he had full power to fix the rate of premium, collect the same and issue policies. The Co-operative Company had numerous agents soliciting insurance in the counties named, who were informed by Sage of his appointment and the purpose of it and to whom he sent blank applications, with instructions that in case they secured business for the defendant they should fill out such applications as completely as possible and send to him at Catskill, leaving blank the place to be signed by the agent for his (Sages's) signature.

On May 12, 1887, Charles E. Nichols, one of the agents for the Co-operative Company, as a result of negotiations had with the plaintiffs, filled out one of the blank applications which had been sent to him as aforesaid, and forwarded it by mail to Sage at Catskill.

On its receipt Sage wrote to Nichols saying that he had written to the defendant in reference to the risk, and would advise him as soon as he heard from them. That the risk was special and he did not wish to write it without first submitting it to the company.

On the same day he wrote to the defendant at New York, stating the application, and what the risk was, and the defendant immediately replied rejecting the application and declining to write the policy.

This letter from the defendant was received by Sage about May nineteenth, but he neglected to notify the plaintiffs or Nichols of the defendant's action.

The application made out by Nichols was as follows:

" New York Bowery Fire Insurance Company, of New York, in consideration of thirteen $\frac{50}{100}$ dollars, do insure G. B. More & Co. to the amount of eighteen hundred dollars on their $1\frac{1}{2}$ story frame building, shingle roofed, situated in the village of North Harpersfield, Del. Co., N. Y., on the south side of Maine street, used as a creamery for the manufacture of butter. Said eighteen hundred dollars is divided as follows: $800 on building; $800 on fixtures therein; $200 on butter packages, milk cans and butter therein contained. Terms six months. Amount, $1,800. Rate, $\frac{3}{4}$ per cent. Premium, $13.50.

" Commences May 12, 1887. Terminates November 6, 1887.

" ————, Agent."

On May thirtieth the plaintiffs sent a check for the premium agreed upon to Nichols, which he received, but never remitted to Sage or the defendant, and on June sixth the buildings were burned.

With reference to the application for the insurance the referee found that it was made after two or three conversations between Nichols and the plaintiffs, and " was written on the day of its date as the final agreement which the plaintiffs had concluded to make and as the terms had been agreed on."

" That the plaintiffs did not see the application blank."

" That the plaintiffs understood distinctly, from their conversation with Nichols, that he could not make or issue a policy of insurance upon their property in behalf of the defendant, and that before such policy could be issued their application must receive the approval of some other person or persons."

With reference to the payment of premium he found " that a day or two thereafter Nichols met one of the plaintiffs, who asked him if he had received the check, and said that he had received no policy, and Nichols told him that it was all right, that he had heard nothing from the company, and consequently it was all right and that he would get the policy in a day or two."

" That plaintiffs. believed that they were insured according to the terms of the writing, * * * after the assurance given them by Nichols upon the receipt of the check for the premium, that it was all right or he would have have heard from the company." He found as a conclusion of law " that the writing of Nichols on the 12th day of May, 1887, together with the acts of the defendant and the agent Sage, and· by reason of the writing not being repudiated within a reasonable time after it was submitted to the defendant, became and was a valid and subsisting contract of insurance at the time of the fire according to the terms of the writing and in the form of the standard stock policy of the state, and was as such binding on the defendant."

Further facts are stated in the opinion.

*A. H. Sawyer* for appellant. On the 12th day of May, 1887, Charles E. Nichols was not, and never had been, an agent of the defendant, or authorized to solicit insurance for said company. (*DeGrove* v. *M. Ins. Co.*, 61 N. Y. 594; Laws of 1886, chap. 488 ; *Avery* v. *Ward*, 150 Mass. 160.) Had Nichols been a regularly commissioned agent of the defendant, with power to make contracts of insurance and issue policies, he could not make a parol contract of insurance, but only a parol contract to insure by the issuing and delivery of a policy of insurance in the usual form. (*Angell* v. *H. F. Ins.*

*Co.*, 59 N. Y. 173.)   All the evidence in reference to the insuring of R. G. Nichols, and the taking of the application by Charles E. Nichols, was incompetent and should have been excluded under the defendant's objection.   (*Wood* v. *P. Ins. Co.*, 32 N. Y. 623 ; *Adams* v. *G. Ins. Co.*, 70 id. 170 ; *Burr* v. *A. Ins. Co.*, 4 Hun, 275 ; *Bush* v. *W. F. Ins. Co.*, 63 N. Y. 531 ; *Marvin* v. *Wilber*, 52 id. 270 ; *Reynolds* v. *C. Ins. Co.*, 36 Mich. 131 ; *Fleming* v. *H. F. Ins. Co.*, 42 Wis. 616 ; *Stollenwerk* v. *Thatcher*, 115 Mass. 224.)   Nichols had no power to make a contract of insurance, or a contract to deliver a policy of insurance which would be binding upon the defendant until accepted and ratified by it.   (Story on Agency, § 133 ; *Chase* v. *H. Ins. Co.*, 22 Barb. 527, 532; *Wilson* v. *G. M. Ins. Co.*, 14 N. Y. 418, 421 ; *Marvin* v. *Wilbur*, 52 id. 270; *Kyte* v. *C. U. Ins. Co.*, 144 Mass. 43 ; *Harrison* v. *C. F. Ins. Co.*, 9 Allen, 231 ; *Stringham* v. *S. N. Ins. Co.*, 3 Keyes, 280 ; 4 Abb. Ct. App. Dec. 315 ; *Bush* v. *W. Ins. Co.*, 63 N. Y. 531 ; *Merserau* v. *P. M. L. Ins. Co.*, 66 id. 274 ; *O' Reilly* v. *C. L. Ass.*, 101 id. 575 ; *Tate* v. *C. F. Ins. Co.*, 13 Gray, 79 ; *Lohnes* v. *Ins. Co.*, 121 Mass. 439 ; Wood on Ins. [2d ed.] 830 ; *Burr* v. *A. Ins. Co.*, 4 Hun, 275.)   The burden is upon the plaintiffs to show that the alleged oral contract was within the authority of Nichols.   (Wood on Ins. [2d ed.] 823, 870 ; May on Ins. [3d ed.] § 138 ; *Fleming* v. *H. F. Ins. Co.*, 42 Wis. 620 ; *Merserau* v. *P. M. L. Ins. Co.*, 66 N. Y. 274, 279 ; *Harrison* v. *C. F. Ins. Co.*, 9 Allen, 233 ; *Lobdell* v. *Baker*, 1 Metc. 201 ; *Adriance* v. *Roome*, 52 Barb. 399, 411.)   The findings of law, by the referee are wholly unwarranted. (*Haskin* v. *A. Ins. Co.*, 78 Va. 700 ; *Misselhorn* v. *M. R. F. L. Assn.*, 30 Fed. Rep. 545 ; *R. Ins. Co.* v. *Beatty*, 119 Penn. St. 6 ; *Sargent* v. *N. F. Ins. Co.*, 86 N. Y. 626.)

*John P. Grant* for respondents.   The powers of an insurance agent are *prima facia* co-extensive with the business entrusted to his care, and will not be narrowed or limited by limitations not communicated to the person with whom he deals.   (*Ins. Co.* v. *Wilkinson*, 13 Wall. 222.)   Sage had power

and authority to transact the business of the defendant through clerks, assistants or sub-agents, and their acts were his acts if within the scope of his authority, and would bind the company. (May on Fire Ins. 159; *Bodine* v. *E. F. Ins. Co.*, 51 N. Y. 117; *E. F. Ins. Co.* v. *R. Ins. Co.*, 55 id. 343; *Arff* v. *S. F. Ins. Co.*, 125 id. 57; *Davis* v. *L. Ins. Co.*, 18 Hun, 230.) The defendant ratified the relation of the agent or solicitor, Nichols, with Sage in making the contract for insurance on R. G. Nichols' store and contents, by accepting the risk, receiving the premium and issuing the policy, thereby approving of Nichols' employment as solicitor. (*Plumb* v. *C. Ins. Co.*, 18 N. Y. 392; *Newman* v. *S. Ins. Co.*, 17 Minn. 123; *Goodson* v. *Brook*, 4 Camp. 163; *Rowley* v. *E. Ins. Co.*, 36 N. Y. 550.) The acts of the agent, Sage, were within the scope of his authority in making the contract in question, and bind the company. (*Kuney* v. *A. Ins. Co.*, 36 Hun, 68; *N. A. Ins. Co.* v. *Thorpe*, 7 Am. Rep. 138; *Ins. Co.* v. *Wilkinson*, 13 Wall. 322; *Peckham* v. *P. Ins. Co.*, 65 N. Y. 195; *Bodine* v. *E. F. Ins. Co.*, 51 id. 117; *Armour* v. *M. C. R. R. Co.*, 65 id. 122.) The parties could make a valid parol contract to insure, and the contract can be enforced. (*Trustees, etc.*, v. *B. F. Ins. Co.*, 19 N. Y. 305; *S. F. Ins. Co.* v. *K. M. & F.' Ins. Co.*, 7 Bush. 81; *Sherman* v. *N. F. Ins. Co.*, 46 N. Y. 500; *Angel* v. *H. F. Ins. Co.*, 59 id. 171; *Ellis* v. *A. C. F. Ins. Co.*, 50 id. 492.) The contract in question lacks none of the necessary elements to make it complete. (May on Fire Ins. §§ 41, 42, 44; Wood on Fire Ins. 23.) The payment of the premium was the performance of the contract on the part of the plaintiffs, and binds the company. (*Perkins* v. *W. Ins. Co.*, 4 Conn. 625.) The agent, Nichols, accepted plaintiffs' check in full payment of the premium. (May on Fire Ins. 136; Wood on Ins. 74.) The agent, Nichols, having authority to collect the premium, his neglect to account to the company cannot be charged to the plaintiffs. (May on Fire Ins. 137.) The knowledge of the agent, Sage, is the knowledge of the company. (*Peckner* v. *P. Ins. Co.*, 65 N. Y. 208.) The

company should be held responsible for the neglect of its
agent. (*Fisher* v. *Cottennett*, 44 N. Y. 538.) The defendant
waived proof of loss and cannot avoid liability upon the ground
of failure of notice of loss, or any informality in the notice.
The refusal to pay the loss by the company upon the ground
that there never was any contract to insure, is a waiver of
notice. (*Audubon* v. *E. Ins. Co.*, 27 N. Y. 234; *O'Neill*
v. *B. F. Ins. Co.*, 3 id. 122; *McMaster* v. *W. C. M. Ins.
Co.*, 25 Wend. 379; *Penley* v. *B. Ins. Co.*, 7 Grant, 130.)
A failure on the part of the insurer to notify the assured of
the rejection of his application can be construed as an accept-
ance thereof, the insurer promising to notify the assured if
the application was rejected. (*Ins. Co.* v. *Johnston*, 23
Penn. St. 72.) The point made by the defendant that under
chapter 488, Laws of 1886, that "in any matter relating
to this insurance no person, unless duly authorized in writing,
shall be deemed the agent of the company," and, therefore, no
agency was established by the proof in this case, is not well
taken. (*Arff* v. *S. Ins. Co.*, 125 N. Y. 57.) The acts of the
agent Nichols in connection with the acts of the agent Sage,
in reference to the contract and its acceptance, are binding
upon the defendant. (*Arff* v. *S. F. Ins. Co.*, 125 N. Y. 57.)

BROWN, J. The question presented in this case is whether
there was a contract for insurance between the parties and it
may be said that if such a contract existed at any time subse-
quent to May twelfth it had not been rescinded or annulled at
the time of the fire.

If there was a contract it grows out of the acts of the agent
Sage and his subordinate Nichols, which are binding upon the
defendant notwithstanding the fact that it promptly refused
to accept the risk or issue a policy when the application was
presented to it.

An agent of a fire insurance company having unrestricted
authority to accept risks, fix premiums and make and issue
policies has power to bind his principal by a preliminary parol
contract to issue a policy. (*Ellis* v. *Albany City Fire Ins.*

*Co.*, 50 N. Y. 402; *Angell* v. *Hartford Fire Ins. Co.*, 59 id. 171.)

Such was the power possessed by Sage as agent of the defendant and had he agreed to issue a policy to the plaintiffs the judgment could be sustained.

The General Term based its decision upon the application of the principle of the cases cited to the facts which that court assumed to exist that Sage knew on May sixteenth that the insurance according to the agreement between Nichols and the plaintiffs was to take effect from May twelfth and that the plaintiffs relied upon the defendant as an insurer of their property, and that Sage's silence under these circumstances was in legal effect an approval of the application and a consent on the part of the defendants to enter into the contract contemplated by the plaintiffs. That Sage had the power and authority to make just such a contract as plaintiffs claim was made may be conceded, but the facts assumed by the General Term were not found by the referee.

He refused to find that Nichols agreed that in case the property was burned after May twelfth plaintiffs would get their insurance or that the agreement was to commence on that date. The finding that he did make was that the evidence tended to the belief that it was to be considered as commencing on that day.

But this was qualified by another finding that plaintiffs understood from Nichols that he could not issue a policy, and that before that was done their application must receive the approval of some other person. In effect this was a finding that there was not to be a contract until the application was approved elsewhere.

The evidence does not disclose that Sage had any knowledge concerning the negotiations between plaintiffs and Nichols except such as he derived from the application and in view of the findings of the referee that I have quoted it cannot be said that on May sixteenth he knew or had any reason to suppose that the plaintiffs relied upon the defendant as an insurer of their property. On the contrary the finding of the referee in

reference to the plaintiffs' belief on that subject is that they "believed that they were insured after being informed by Nichols that he had received the premium and that it was all right or he would have heard from the company."

But this was on June first, and on May eighteenth Sage had informed Nichols by letter that he could not approve the application — that the risk was a special one and could not be accepted without the defendant's consent. It appears, therefore, that the referee has not found that plaintiffs relied upon the defendant as insurer of their property, until about June first, six days before the fire, and that this resulted not from Sage's neglect to inform them that the application was refused, but from what Nichols told them on that date.

It is contended, however, that a contract can be inferred from Sage's silence and failure to notify the plaintiffs that the application was rejected. This, I think, would be a novel doctrine to introduce into the law of contracts. In discussing it I assume Sage's powers to have been those of a general agent and co-extensive with that of the defendant.

The courts have applied the principles of waiver and equitable estoppel in a most liberal manner to insurance contracts, but always to enforce good faith and to prevent injustice and fraud where the insured has been misled by the acts of the company or its agents. But no case has yet decided that the mere failure to respond to an application raised an inference that the company accepted and insured the risk.

A party cannot be held to contract where there is no assent.

Silence operates as an assent and creates an estoppel only when it has the effect to mislead.

There must be such conduct on the part of the insurer as would, if it were not estopped, operate as a fraud on the party who has taken or neglected to take some action to his own prejudice in reliance upon it. (2 May on Ins. § 508.)

When a party is under a duty to speak, or when his failure to speak is inconsistent with honest dealings and misleads another, then his silence may be deemed to be acquiescence.

If the company knew a person was acting as its agent with-

out or in excess of authority and did not disclaim his acts, it might be held liable, as in such a case there is a duty to speak.

But this case presents no element of that character.

The plaintiffs knew that Nichols had no authority to contract with them on behalf of the defendant. Their application was promptly rejected by the defendant when it reached it.

They were not misled by the neglect of Sage to notify them of that fact. They knew they had no contract until the application was approved and they could at any time have withdrawn their application and secured other insurance. If they had done so and the defendant had issued a policy, it could not be claimed that they were liable for the premium. It is very plain that they relied upon Nichols and his statement that " it would be all right," but as they knew he had no power to speak for the company their trust was in him alone and they had at no time any legal claim upon the defendant.

While I do not find that this question has been presented before in the courts of this state, it has been raised in other jurisdictions and decided adversely to the plaintiffs' claim.

In *Insurance Co.* v. *Johnson* (23 Penn. St. 72), a fire occurred six months after the application was made, during which time the company had neglected to notify the plaintiffs that their application was rejected, and that delay was claimed to justify the inference of a contract. It was held that a proposal could not become a contract from delay in rejecting or answering it.

In *Royal Ins. Co.* v. *Beatty* (119 Penn. St. 6), the validity of a policy by renewal was involved, and it was decided that when, in an action upon a contract, plaintiff's case consists of proof of a proposal with the presumption of assent thereto arising from silence of the defendant, no legal inference of a contract can arise out of such silence without evidence of a duty to speak on the part of the defendant, which was neglected to the plaintiff's harm.

To the same effect are *Haskin* v. *Agricultural Fire Ins. Co.* (78 Va. 700); *Misselhorn* v. *Mut. R. F. Life Assn.* (30 Fed. Rep. 545); *Winnesheik Ins. Co.* v. *Holzgrafe* (53 Ill. 516).

And it was said in *Titus* v. *Glens Falls Ins. Co.* (81 N. Y. 410), in reference to a waiver by an insurance company of a breach of a condition which forfeited the policy, that " A waiver cannot be inferred from mere silence. It (the company) is not obliged to do or say anything to make a forfeiture effectual."

And it may be added that a person is under no obligation to do or say anything concering a proposition which he does not choose to accept.

Our opinion is that when an application for insurance is made, and its rejection is not signified, no presumption of its acceptance can be indulged in.

There must be actual acceptance, or there is no contract.

The respondent contends further that the company was bound from the time of the payment of the premium to Nichols. This payment was never remitted to Sage or to the company, and it is not found that they had any knowledge of it. Its effect, therefore, depends on the relation which Nichols bore to the defendant, and the knowledge which plaintiff had of his powers.

There is no finding in the case that Nichols was the defendant's agent. The referee refused to find either that he was or was not defendant's agent. He found that Sage had authority to appoint sub-agents, and that the acts done by Nichols in connection with the risk in question were within the scope of Sage's authority. But this does not aid the plaintiffs in view of the express finding that plaintiffs knew that the application had to be submitted to some other person or persons, and approved by them before a policy could be issued.

The negotiations with Nichols did not reach the point where a contract was made. Nichols did not assume to have power to contract. The plaintiffs understood that perfectly. There was an application to defendant through Nichols. He was the solicitor merely. His apparent power to represent the defendant did not go beyond that. The application was to be approved by, and the contract to come from, some person other than him.

That person was either Sage or the company. The application reached and passed Sage without approval, and of this fact Nichols was informed, and he then knew that the contract, if made, must come from the company. About June first, the plaintiff learned from Nichols that he had received no word from the company that the application had been approved or the risk accepted. In substance, Nichols informed them that approval must come from the company, and yet he told them, because it had not come, it was all right, and they would get the policy in a day or two.

Now, it is very plain that Nichols had no authority to make that statement. Had plaintiffs any right to rely upon it?

Did the acceptance of the premium by Nichols, coupled with the statement that it was all right and the policy would come in a day or two, bind the defendant? Obviously not, under the finding that plaintiffs had been informed that he had no power to make or issue a policy, and that before their application could grow into a contract, it must be approved elsewhere. This fact, of which plaintiffs were informed at the beginning of their negotiations, limited and qualified all their subsequent dealings with Nichols. The payment of the premium could not, therefore, bind the defendant, as Nichols had no authority to contract on its behalf, and for the same reason his statement that "it was all right and they would get the policy in a day or two," was the expression of an opinion merely. Having no power to contract, he could not bind the defendant by a representation as to the effect of its failure to report its action upon the application. A different question would have been presented had the plaintiffs dealt with Nichols as the agent of the defendant, with no knowledge as to any limitations upon his power. (*Bodine* v. *Exchange Fire Ins. Co.*, 51 N. Y. 117; *Arff* v. *S. F. Ins. Co.*, 125 id. 57–64.) But such a case is not presented on the facts as found by the referee.

The judgment should be reversed and a new trial granted.

All concur.

Judgment reversed.