BELLA STEINER, Plaintiff, *v.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant.

Supreme Court, New York County, November 16, 1932.

*Slavin & Leichtman* [*John J. Cunneen* of counsel], for the plaintiff.

*Alexander & Green* [*Peter C. Mann* and *James D. Ewing* of counsel], for the defendant.

SHIENTAG, J. Action on a life insurance policy. Defendant insured the life of plaintiff's husband in the sum of $10,000, but now

resists payment on the ground that the policy lapsed before the death of the insured. On June 22, 1928, an annual premium of $608 became due. The insured applied to the defendant for an extension of time within which to pay the premium, accompanying the application for an extension with a check for $116.80. The application was granted and the payment of the balance extended to September 22, 1928. On that date the insured failed to pay the amount due and on the 17th day of October, 1928, again applied to the defendant for a further extension till December 22, 1928, accompanying such application with a check for $35.22. The defendant refused this extension, stating to the insured that the policy had lapsed and advising him to apply for reinstatement.

Thereupon, and on November 1, 1928, the insured applied for reinstatement and on that day paid to defendant the sum of $35.22, requesting that upon reinstatement the payment of premium be extended to December 22, 1928. On the date of this last application, the insured was examined by the defendant's doctor. The report of the doctor was filed on November 16, 1928, nearly two and one-half weeks after the examination. The medical examination disclosed that the physical condition of the insured was such as not to entitle him to reinstatement of the policy in accordance with its original terms. Four days later, namely, November 20, 1928, the underwriter on the basis of the medical report recommended " rated up " insurance without the double indemnity and disability features.

The insured died on December 18, 1928. Up to the date of his death he received no notice from the company of its action. Between the date of the examination and the insured's death six and one-half weeks elapsed. Between the date of the doctor's report and the insured's death over one month elapsed. During these periods the defendant company remained silent. In fact, the first notice of its action was given on March 17, 1928, four months after the death of the insured, four and one-half months after the insured had been examined by the doctor, and four months after the doctor's report had been filed with the company.

Plaintiff seeks to recover the amount of the policy on the ground that any lapse occurring by non-payment of premium on September 22, 1928, was waived and the company estopped from claiming a forfeiture of the policy because it retained the money sent for the extension and reinstatement, and failed to give notice, within a reasonable time, of its action on the insured's application. The defendant, on the other hand, urges that the mere retention of the money did not of itself authorize the insured to assume that the application for reinstatement had been approved, nor did its failure

to notify the insured of the action taken on his application effectuate a waiver; that under the circumstances of the case, the company was under no obligation to advise the insured of the result of his physical examination and the action taken thereon.

When the policy lapsed for non-payment of premiums, the parties to the contract of insurance did not become strangers in the eyes of the law. The lapsed policy was still a contract. Although it did not afford to the insured the same rights that he had enjoyed prior to its lapse, it did afford him valuable rights for which paid premiums were a valuable consideration. One such right was set forth in the following words of the policy: " If this policy shall lapse in consequence of the non-payment of any premium when due, it may be reinstated at any time upon the production of evidence of insurability satisfactory to the Society, and the payment of all overdue premiums, with interest at 5% per annum, and upon the payment with interest or the reinstatement of any indebtedness to the Society secured by this policy."

Under the last provision it is clear that the plaintiff would be entitled to maintain an action under the revived original policy if the medical examination had disclosed that he was entitled to reinstatement upon the original terms. (*Thompson* v. *Postal Life Ins. Co.*, 226 N. Y. 363; *Rome Industrial Ins. Co.* v. *Eidson*, 142 Ga. 253; *Johnson* v. *Southern Life & Health Ins. Co.*, [La.] 139 So. 46.) Such a holding is no more than an enforcement of the insurer's contractual duty to reinstate a lapsed policy upon specified conditions. In the instant case, however, the medical examination of the insured by the insurer's agent revealed a physical condition which would have justified the insurer in rejecting the application for reinstatement of the original policy. (*Gould* v. *Equitable Life Assur. Society*, 231 N. Y. 208.) A somewhat similar situation has been before several courts, namely, the situation in which the insurer, having received an application for reinstatement of a lapsed policy, failed to act upon the application within a reasonable time. Upon this state of facts, even where there was no proof that the insured was in good physical condition at the time of the application, courts have regularly held the insurer liable in the amount of the original policy. Disagreement has arisen only with respect to the theory upon which this liability rests. In some cases [it is said that unreasonable delay in responding to an application operates as a waiver of the incurred forfeiture. (*Trust Co.* v. *Insurance Co.*, 199 N. C. 465; *Mettner* v. *Insurance Co.*, 127 Iowa, 205.) (Cf. *Life & Casualty Co. of Tennessee* v. *Street*, 213 Ala. 588.) Again, it has been said that the offer of the insured is accepted by a prolonged silence on the part of the insurer, in the light of a course of dealing

which gives meaning to silence. (*Lechler* v. *Montana Life Ins. Co.*, 48 N. D. 644; *White* v. *Life Ins. Co.*, 22 Penn. Super. 501.) (See *Johnson* v. *Southern Life & Health Ins. Co., supra,* 48. Cf. Williston Cont. § 91.)

Other courts have reached a similar result on the theory that a contractual duty to reinstate the policy upon specified conditions implies a contractual duty to decide whether the conditions have been met and to inform the applicant of the decision within a reasonable time. (*Leonard* v. *Prudential Ins. Co.*, 128 Wis. 348.) (See *Rome Industrial Insurance Co.* v. *Eidson, supra.*) A fourth theory offered to support the decisions in this field is the theory that a duty on the part of the insurer to deal expeditiously with an application for reinstatement which it has invited arises, not out of contract or waiver, but by virtue of a peculiar social relationship to which the law itself affixes obligations of attentive care. (See 40 Yale Law Journal, 121, note; *Condon* v. *Exton-Hall,* 80 Misc. 369.) The theory of a non-contractual duty on the part of an insurance company has been discussed in connection with cases involving original applications for insurance (*Duffie* v. *Bankers' Life Assn.*, 160 Iowa, 19; *Boyer* v. *Hail Ins. Co.*, 86 Kan. 442; *Wallace* v. *Hartford Fire Ins. Co.*, 31 Ida. 481; *Stearns* v. *Merchants' Life & C. Co.*, 38 N. D. 524), but it has been rejected in this jurisdiction (*More* v. *N. Y. B. F. Ins. Co.*, 130 N. Y. 537). The logic of this rule is apparent. Where no relationship has existed between the insured and the insurer, the courts are loath to impose an obligation on the insurer. In such a situation it would be unfair to require the company to give notice of rejection, where in the first instance it was under no duty to accept. In the present case, however, the situation is different, and the insurer is distinctly under a duty to reinstate, a duty founded in contract, provided the insured meets the medical requirements of the company. Here the company must reinstate if the conditions are met; the policy so provides.

There is no case in this jurisdiction which has passed squarely upon the issue here involved. In other jurisdictions the company has been held liable even though the medical report was unfavorable and the application rejected. (*Trust Co.* v. *Insurance Co.*, 199 N. C. 465; *Meltner* v. *Insurance Co.*, 127 Iowa, 205; *Life & Casualty Co. of Tennessee* v. *Street,* 213 Ala. 588; *Lechler* v. *Montana Life Ins. Co.*, 48 N. D. 644.) The theory adopted is of little consequence. The compelling point to be considered is whether the defendant in this case was under any duty, whether arising out of contract, or otherwise, to notify the insured within a reasonable time of the action taken on his application. It is time " to recognize the position of guardianship occupied by the insurer in society and to endow the insurer with a responsibility for efficient action far greater

than is required of the corner grocer." (40 Yale Law Journal, 121, 127.) This position has been recognized in cases upholding the constitutionality of various measures of State regulation of insurance companies (*German Alliance Ins. Co.* v. *Lewis*, 233 U. S. 389), including the statutory requirement that rejection of an original application for insurance must be made within twenty-four hours. (*National Ins. Co.* v. *Wanberg*, 260 U. S. 71.) The responsibilities which this legal position entails include a duty promptly to communicate to the applicant for reinstatement the decision of the company. The defendant's obligation to act becomes more imperative when it is observed that here the application was not rejected but its acceptance recommenced on modified terms, to wit, " rated up " insurance without the double indemnity and disability features. This was insurance none the less, and the insured was entitled to be apprised of the kind of insurance to which he was entitled. That duty may be read, by implication, into the insurer's express agreement to reinstate a lapsed policy upon the production of satisfactory evidence of insurability. With more directness, perhaps, that duty may be called a non-contractual consequence of the relation between an insurer and the owner of a lapsed policy. The difference between tort and contract is arbitrary in a jurisdiction which has abolished the forms of action.

I find, as a matter of law, that the company delayed an unreasonable length of time before the insured's death in giving notice of its action. It was under an obligation to act promptly and diligently. It failed to meet the duty imposed on it, and it must, therefore, respond in damages.

Verdict is directed in favor of the plaintiff for $10,000, less the amount of the earned premium, together with interest. Exception to defendant. Twenty days' stay and thirty days to make a case. Settle order.