FRENCH AMERICAN BANKING CORPO-
RATION v. FIREMAN'S FUND
INS. CO.

District Court, S. D. New York.
Dec. 5, 1941.

McCanliss & Early, of New York City (Lee McCanliss and Edith Stenberg, both of New York City, of counsel), for plaintiff.

Duncan & Mount, of New York City (Russell T. Mount, of New York City, of counsel), for defendant.

LEIBELL, District Judge.

Plaintiff moves under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for an order granting summary judgment in its favor. The defendant makes a cross motion for similar relief. I am of the opinion that defendant is entitled to summary judgment dismissing the complaint on the merits.

This is an action to recover for the loss of goods which allegedly were insured by the defendant or which the defendant is estopped to deny that it had so insured at the time of the loss. It appears that defendant issued to plaintiff on May 7, 1934, an open policy of insurance covering the plaintiff against any "direct loss and damage by fire on merchandise" of the plaintiff. Under this open policy it was the custom of the plaintiff to deliver to defendant a notice or declaration, upon an application form furnished by defendant, whereby the plaintiff would automatically secure fire insurance. Certain bundles of steel belonging to the plaintiff were located at Pier 11 of the French Line, at Staten Island, New York. The plaintiff, intending to transport the steel by water from the Staten Island pier to a warehouse at the Port of Newark, instructed its agent, Thomas Buel, to insure the steel for its account through Lunham & Reeve, Inc., a corporation engaged in the business of insurance and of forwarding agents with offices in New York City.

Lunham & Reeve, Inc., prepared an application for insurance on the customary form for use under defendant's open fire policy and endorsed thereon the following: "Fire and Flood Coverage Desired.—Also Transportation Coverage Desired from Pier 11 Staten Island to Port Newark Per Wm. Spencer and Son Corp. Lighter 'Denville' ". The term of the insurance requested was for six months from August 5, 1940.

Mr. T. E. Reeve, of Lunham & Reeve, Inc., delivered the application to the defendant at its office in New York City at or about 10:30 in the morning of August 5, 1940. In an affidavit submitted for plaintiff, Mr. Reeve states: "I handed the application to a representative of defendant in the Marine Insurance Department". Admittedly there was no conversation at the time of the delivery or subsequently, prior to the loss, and no explanatory letter accompanied the so-called application.

Mr. W. R. Burness, marine clerk in the Atlantic Marine Department of defendant, gives his version as follows: On August 5, 1940, at or about 10:45 A. M., he found the declaration in question in an envelope lying on the desk of a Mr. Jones, then on vacation, whose work Burness was attending to. Neither he nor Mr. Jones handle applications for insurance, but receive only declarations under open marine policies. Applications for insurance are delivered by applicants to the underwriting men in the Marine Department. Mr. Burness inspected plaintiff's declaration, which was includ-

ed in an envelope with other declarations under an open marine policy theretofore issued by defendant to another client of Lunham & Reeve, Inc. No one spoke to Mr. Burness about plaintiff's declaration. Upon inspecting it he noticed it sought marine transportation coverage in addition to fire protection. He checked in his own files and those of Mr. Jones for any open policy of marine insurance under which this declaration for marine transportation coverage might be issued. After finding no such open policy, he laid the document aside to take the matter up with the Policy Writing Department which was on a different floor of the building. Due to the pressure of work Mr. Burness had not done anything further when Mr. Reeve telephoned at about four o'clock in the afternoon of August 5, 1940, notifying the defendant that the lighter "Denville" had capsized while being loaded and had dumped plaintiff's sheet steel overboard at about 3 P. M. of that day.

Plaintiff has settled its claim against Wm. Spencer & Son Corp. for $10,560.24. The value of the steel is alleged to have been $20,068.37. This suit is for the difference plus interest.

Both sides to this controversy agree that there is no genuine issue as to any material fact presented by the papers filed on the motions for summary judgment made by the respective parties. Only questions of law are presented. Was there an express contract between the parties for marine transportation insurance as alleged in the first cause of action? Did the failure of the defendant to act upon plaintiff's request for marine transportation insurance for four and a half hours, under all the circumstances of the case, give rise to an inference of assent and create an estoppel, so that there should be imposed upon defendant the same liability as if it had made an express contract for the marine transportation insurance requested by plaintiff, as claimed in the second cause of action?

Plaintiff contends that "in view of the previous course of dealings between the plaintiff and defendant it must be held that defendant accepted plaintiff's application for the risks specified therein immediately upon its receipt, or shortly thereafter, or that defendant waived its right to reject such application by its delay in passing upon it."

It appears from the affidavits submitted herein and an analysis of the document

sued on that the plaintiff had an open policy of fire insurance with the defendant dating from 1934. Plaintiff's bill of particulars admits that such policy did not cover transportation losses other than those occasioned by fire. It likewise appears that under the open fire policy plaintiff need only to file a declaration with the defendant upon the latter's form stating the merchandise to be covered and automatically plaintiff would be covered and defendant would be liable for any damage to the merchandise. Defendant never issued to plaintiff any insurance covering marine risks prior to August 7, 1940, when it insured the remaining 56 bales of steel sheets on board another lighter for not exceeding 72 hours after arrival at Newark, at the special request of plaintiff.

There is a distinction between the operative effect of a declaration of property by an assured under an existing "open" policy, and an application for insurance that does not exist at the time the application is made. In the latter case, there must be an application for the insurance sought and an acceptance of the risk by the insurance company before a contract of insurance arises. It is not automatic, as in the case of a declaration by the assured under an "open policy". It is conceded by the defendant that plaintiff's declaration filed under its "open" fire policy automatically insured plaintiff against loss of said merchandise through fire, but defendant contends that insofar as marine transportation risks were concerned plaintiff improperly included this item in the declaration under its "open" fire policy. It contends that plaintiff should have filed an application for marine transportation coverage independently of the declaration under plaintiff's open fire policy. That plaintiff recognized this defect in its procedure is illustrated by the following excerpt from a letter dated November 1, 1940, addressed to C. R. Page, president of the defendant, by Jean de Sieyes, president of the plaintiff: "Therefore, it is clear that the failure to obtain a contract from your company signed and sealed was due to the failure of your employees to respond to an inartificially prepared application."

Defendant claims that had the plaintiff's application for marine risk coverage (transportation), which was typed in the lower left hand corner of the plaintiff's declaration under the defendant's open fire policy, been immediately turned over to the

underwriter of the defendant who is responsible for the acceptance of risks, the risk involved in plaintiff's application "would not have been accepted without a survey of the situation including inquiries as to the reputation of the owner of the lighter 'Denville', and also as to the seaworthiness of the lighter 'Denville', nor without arranging for reinsurance of the greater part of the $27,000 risk."

It is important to note that no one ever informed the defendant that the steel was to be transported that day. The declaration filed stated that the risk was to be for six months commencing August 5, 1940.

There was no fraud in the case at bar. If plaintiff's agents were misled into the belief that their client's goods were covered by marine insurance by what they did on August 5th, it was due in great measure to the unorthodox manner in which the application for the insurance was presented. "Contracts are not made so easily".

■ Inasmuch as the alleged contract and all of the acts complained of occurred in New York, the law of that state is controlling herein. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109.

■ The first cause of action is predicated upon a theory of actual contract. Obviously there is no merit in such alleged cause of action. Plaintiff in its bill of particulars concedes that its open fire policy with the defendant does not specifically insure against loss or damage during transportation other than by fire. A reading of the policy itself precludes any basis for an argument to the contrary. Accordingly the first cause of action is dismissed.

Plaintiff relies upon the theory of estoppel in its second cause of action against the defendant. It contends that upon the facts herein the defendant is estopped to deny the acceptance of plaintiff's request for a policy insuring the plaintiff against transportation risks and that the estoppel arises "by reason of the failure of defendant to act upon the application of plaintiff within a reasonable time." To support this contention plaintiff relies heavily upon the New York case, Steiner v. Equitable Life Assurance Society of United States, 146 Misc. 292, 262 N.Y.S. 11.

Steiner v. Equitable Life Assurance Society of United States, supra, involved an application for reinstatement of a life insurance policy which by its terms provided for reinstatement where the policy lapsed by reason of non-payment of premiums. The plaintiff applied for reinstatement of his policy on November 1, 1928, and paid the sum of $35.22, which would extend the policy to December 22, 1928. On the same day the insured was examined by defendant's doctor who filed his report with the defendant on November 16, 1928. The insured died on December 18, 1928, without having received notification of rejection from the defendant. The Court held the defendant liable on the policy, stating at page 296 of 146 Misc., at page 16 of 262 N.Y.S.: "I find, as a matter of law, that the company delayed an unreasonable length of time before the insured's death in giving notice of its action. It was under an obligation to act promptly and diligently. It failed to meet the duty imposed on it, and it must therefore respond in damages."

I am of the opinion that said authority is not controlling upon the facts herein. As I read the Court's opinion, it is predicated almost entirely upon the right of the insured to insist upon a reinstatement of his policy by the very terms of the policy itself. Justice Shientag recognized that a theory of non-contractual duty on the part of an insurance company with respect to original applications for insurance had been repudiated by the Court of Appeals in More v. New York Bowery Fire Ins. Co., 130 N.Y. 537, 29 N.E. 757. He states at page 295 of his opinion in 146 Misc., at page 15 of 262 N.Y.S.: "The logic of this rule is apparent. Where no relationship has existed between the insured and the insurer, the courts are loath to impose an obligation on the insurer. In such a situation it would be unfair to require the company to give notice of rejection, where in the first instance it was under no duty to accept. In the present case, however, the situation is different, and the insurer is distinctly under a duty to reinstate, a duty founded in contract, provided the insured meets the medical requirements of the company. Here the company must reinstate if the conditions are met; the policy so provides."

■ In the instant case the plaintiff contends that because of the prior dealings of

the parties, the same rule should be applied here. The error of this contention is that it overlooks the fact that the prior dealings between the parties here were limited to the "open" fire policy and not to any marine or transportation risks. It needs no argument for the statement that plaintiff could not require the defendant to accept a marine risk under the "open" policy of fire insurance. This being so, the defendant was under no duty by reason of prior dealings to act promptly upon the application for marine insurance tendered by the plaintiff. The opinion in the Steiner case, supra, supports the conclusion that there was no duty upon the defendant to give prompt notice of rejection, under the facts presented in the present case.

 The law of New York on waiver and estoppel in respect to insurance policies is set forth succinctly in the following quotation from More v. New York Bowery Fire Ins. Co., 130 N.Y. 537, at page 545, 29 N.E. 757, 758:

"The courts have applied the principles of waiver and equitable estoppel in a most liberal manner to insurance contracts, but always to enforce good faith, and to prevent injustice and fraud where the insured has been misled by the acts of the company or its agents. But no case has yet decided that the mere failure to respond to an application raised an inference that the company accepted and insured the risk. * * *

"A party cannot be held to contract where there is no assent.

"Silence operates as an assent, and creates an estoppel, only when it has the effect to mislead.

"There must be such conduct on the part of the insurer as would, if it were not estopped, operate as a fraud on the party who has taken, or neglected to take, some action to his own prejudice in reliance upon it. 2 May, Ins. § 508."

In a more recent case, Truglio v. Zurich General Acc. & L. Ins. Co., 247 N.Y. 423, 160 N.E. 774, where it was argued that an assent to the transfer of a public liability insurance policy to the new owner of real property was to be inferred from the failure of the insurance company to act upon the request for two days, Chief Judge Cardozo wrote at pages 426, 427 of 247 N.Y., at page 774 of 160 N.E.: "This is a case where the original party to the contract has dropped out altogether, transferring the whole title to others, who have no interest in the insurance unless a new contract has been made between them and the insurer. The policy of insurance in their hands was no longer 'a live instrument' (Lett v. Guardian Fire Ins. Co., 125 N.Y. 82, 25 N.E. 1088), unless life was breathed into it again by force of a new assent responsive to a new offer. We are told that such assent is to be inferred as a matter of law from the failure to act upon the request for two days, and this in the face of a provision that no assignment shall be effective without written approval indorsed upon the policy. Contracts are not made so easily. The defendant was free to accept or to reject the new owners either with reason or without. Mere silence or inaction left the situation as it was. For a fortnight or more the owners had been without insurance. The policy issued to their grantor had spent its force as a contract upon the conveyance of the property. More than a request was needed to bring it back to life."

 For cases in other states on the point that mere delay, mere inaction, cannot amount to an acceptance of the application, see Cooley's Briefs on Insurance, Second Edition, Vol. 1, p. 596.

On the facts presented, I am of the opinion that plaintiff has no cause of action against the defendant either on an express contract or on a contract inferred through the application of the doctrine of estoppel to defendant's conduct. The motion of the plaintiff for summary judgment is denied and defendant's cross-motion for the same relief is granted.

Settle order on notice.