(C.D. 2057)

Pacific Smelting Company
W. J. Byrnes & Co., Inc. } *v.* United States

United States Customs Court, Second Division

(Decided December 22, 1958)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *Edward N. Glad, Joseph Schwartz,* and *Eugene L. Girden* of counsel) for the plaintiffs.

*George Cochran Doub,* Assistant Attorney General (*Richard E. FitzGibbon* and *Henry J. O'Neill,* trial attorneys), for the defendant.

Before Lawrence, Rao, and Ford, Judges; Lawrence, J., not participating

Ford, Judge: The four suits listed in schedule "A," attached hereto and made a part hereof, were consolidated for purposes of trial

1

and disposition. The merchandise covered by said suits has been stipulated to be zinc scrap, fit only for remanufacture. The collector of customs at Los Angeles, Calif., assessed duty at three-fourths of 1 cent per pound under paragraph 394 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, which provides for old and wornout zinc, fit only to be remanufactured, zinc dross, and zinc skimmings.

It is contended by plaintiffs herein that the involved merchandise is properly classifiable under paragraph 394 of the Tariff Act of 1930, as modified, *supra*, but that said merchandise is entitled to entry free of duty under the provisions of Public Law 869, 81st Congress, as extended and amended by Public Law 221, 83d Congress, T. D. 53316.

The pertinent provisions of the laws involved herein are as follows:

Paragraph 394 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802:

Old and worn-out zinc, fit only to be remanufactured, zinc dross, and zinc skimmings_____ ¾¢ per lb.

Public Law 869, 81st Congress, as amended by Public Law 66, 82d Congress, first session, T. D. 52771, and by Public Law 535, 82d Congress, second session, T. D. 53068, reads as follows:

Sec. 1. (a) No duties or import taxes shall be levied, collected, or payable under the Tariff Act of 1930, as amended, or under section 3425 of the Internal Revenue Code with respect to metal scrap, or relaying and rerolling rails.

*        *        *        *        *        *        *

Sec. 2. The amendment made by this Act shall be effective as to merchandise entered, or withdrawn from warehouse, for consumption on or after the day following the date of the enactment of this Act and before the close of June 30, 1953. * * *

Public Law 221, 83d Congress, *supra*:

* * * *Provided*, That this Act shall not apply to lead scrap or zinc scrap (other than zinc scrap purchased under a written contract entered into before July 1, 1953).

The issue presented to the court for determination is whether the involved merchandise was purchased pursuant to a written contract entered into before July 1, 1953. Since no formal contract in writing appears to have been entered into by the importer, a number of documents were offered and received in evidence in an effort to establish a written contract.

The legal problem presented herein is a novel one in the field of customs law. There are numerous cases in the general practice of law on the subject of contracts. These cases are, for the most part, cases arising out of a breach of the contractual obligation and the remedies applicable. In this matter, we, of course, are not interested

in either the rights or obligations of the contracting parties. We are particularly interested in the intent of Congress in enacting the proviso contained in Public Law 221, *supra*, and whether the evidence presented herein establishes a written contract.

The four consolidated suits are the results of transactions with three producers of zinc scrap. For purpose of simplication, the merchandise covered by protest 321597–K was purchased from Rylands Bros. and is hereinafter referred to as the Rylands transaction; the merchandise covered by protest 321598–K was purchased from Messrs. John Lysaght (Australia) Pty., Ltd., and is hereinafter referred to as the Lysaght transaction; and the merchandise covered by protests 321599–K and 321600–K was purchased from Albert G. Sims, Ltd., and is hereinafter referred to as the Sims transaction.

The intent of Congress in employing the language utilized in the proviso contained in Public Law 221, *supra*, becomes quite apparent when the legislative history is considered. Senate Report No. 636 covers this matter quite satisfactorily, and is as follows:

United States Code, Congressional and Administrative News, 83d Congress, first session, 1953, volume 2, page 2215, Senate Report No. 636, at page 2218:

> In view of the Bureau of Mines' statistics that only 3,325 tons of zinc scrap were imported during 1952, the Finance Committee was of the opinion that permitting duty-free imports of zinc scrap during the 1-year extension would not, if limited to imports under written contracts entered into prior to July 1, 1953, aggravate the present distressed condition of the domestic zinc mining industry.

An examination of this report establishes the motivating force behind the amendment to Public Law 869, *supra*, which permitted zinc scrap to be admitted free of duty. Congress, by Public Law 221, *supra*, was attempting to relieve the depressed condition of the domestic zinc industry by returning zinc scrap to the dutiable list. However, Congress also took into consideration pending commitments of American importers, by continuing the exemption from duty of zinc scrap, if purchased under a written contract entered into before July 1, 1953.

While the rate of duty in effect at the time of entry for consumption or withdrawal from warehouse is generally the rate applicable to imported merchandise, and that rate in the instant case is three-fourths of 1 cent per pound under paragraph 394 of the Tariff Act of 1930, as modified, *supra*, it would appear that, in these transactions, certain other factors must be taken into consideration.

An examination of the official papers, which are part of the *res gestae* of this suit, establishes that the zinc scrap covered by the Rylands transaction was shipped from Australia to the United States on June 20, 1953, but did not arrive in the United States nor was it entered for consumption prior to July 1, 1953. July 1, 1953, is

merely the date before which a written contract must have been entered into for the purchase of the zinc scrap and is not the deadline before which entry of such merchandise must be made. Actually, the extension of Public Law 869, *supra*, terminated on June 30, 1953, and Public Law 221, *supra*, was not approved until August 7, 1953.

If merchandise was shipped prior to the date by which, under the law, a written contract must have been entered into, it must be presumed that not only was a contract negotiated prior to said date, but that it was executed by said date. In support of the fact that the merchandise covered by the Rylands transaction was purchased under a written contract entered into prior to July 1, 1953, plaintiffs offered and there was received in evidence, plaintiffs' collective exhibit 1, which contained, among other documents, a purchase order of Gollin & Co., Ltd. (the agent of Pacific Smelting Company), dated June 5, 1953, for 65/70 tons of zinc ash. The importation covering the Rylands transaction consisted of approximately 69 tons of zinc ash, so that it appears to be in accordance with the purchase order. The purchase order provides for type and amount of merchandise, how it is to be packed and on what vessel it is to be shipped, and the price of 14 per centum of the average East St. Louis price for zinc for 5 market days, following the date of the bill of lading. While neither the official papers nor plaintiffs' collective exhibit 1 contains a copy of the bill of lading, it is obvious that such document would, of necessity, have been issued at the time of lading and, therefore, the price was determined. The purchase order is addressed to Messrs. Rylands Bros. and is signed by the managing director of Gollin & Co., Ltd., the agent for Pacific Smelting Company.

The Lysaght transaction is similarly one covered by negotiation, shipment, and payment prior to July 1, 1953. There was introduced and received in evidence, as plaintiffs' collective exhibit 2, a number of documents including a purchase order of Gollin & Co., Ltd., dated May 13, 1953, addressed to Messrs. John Lysaght (Australia) Pty., Ltd., for 22/25 tons of galvanisers unsweated slab zinc dross. Plaintiffs' collective exhibit 2 also contains a photostatic copy of a check payable to the order of "Gollin Co." in the sum of $3,631, dated May 19, 1953, representing funds for this transaction, as well as a letter from Gollins & Co., Ltd., dated June 15, 1953, which enclosed a check in the sum of $719.43, representing a credit due to undershipment, since this entry contained only approximately 20 tons of zinc scrap.

The purchase order of Gollin & Co., Ltd., to Messrs. John Lysaght (Australia) Pty., Ltd., dated May 13, 1953, which is duly signed by the agent of Pacific Smelting Company, specifies the quantity of merchandise, the price, and terms, as well as the vessel upon which the zinc dross was to be shipped.

It is an elementary principle of the law of agency, which needs no citation, that the contract of a duly authorized agent, acting within the scope of his employment, is considered to be the contract of the principal. This principle is applicable to the Rylands and Lysaght transactions, since it has been established that Gollin & Co., Ltd., was the duly authorized agent of Pacific Smelting Company and appears to have been acting within the scope of its employment.

Plaintiffs have cited numerous cases which, although they relate to the remedies and rights of parties to a contract, do satisfactorily establish that a purchase order, under proper circumstances, may constitute a written contract.

Particularly pertinent is the law of evidence, succinctly stated in 32 C. J. S. 834, section 910 (d), which states as follows:

* * * A written purchase order which contains the entire agreement cannot be varied by parol, and where there are a written order and an acceptance thereof, as by an acceptance in writing or by delivery and receipt of the goods, or where a written order is made in acceptance of a written offer, these constitute the contract and cannot be varied or contradicted.

The zinc scrap covered by the Rylands and Lysaght transactions was purchased pursuant to a written purchase order which was duly accepted by the respective shippers prior to July 1, 1953. Accordingly, these transactions became, within the contemplation of law, written contracts, which, having been fully entered into prior to the cutoff date, were covered by the exemption preserved in Public Law 221, *supra.*

The evidence adduced in the Sims transaction does not appear to satisfactorily establish the necessary elements of a contract. Plaintiffs' collective exhibit 3 contains a number of letters, as well as various documents, including an invoice, dated May 27, 1953, signed by the shipper. The merchandise covered by this transaction, was invoiced and shipped prior to July 1, 1953. Plaintiffs contend that the invoice directed to the purchaser and signed by the seller represents a contract. In the case of *Tanenbaum Textile Co.* v. *Schlanger,* 40 N. E. 2(d) 225, 287 N. Y. 400, it was held that an invoice, as such, is not a contract, but is merely a detailed statement of the nature, quantity, and cost or price of the things invoiced. An examination of plaintiffs' collective exhibit 3, particularly the copy of the letter of credit, dated April 15, 1953, the copy of the notice of assignment of the letter of credit from the National Bank of Australasia, Ltd., dated May 11, 1953, and copy of the notice of assignment of letter of credit and the notice of debit of the Union Bank & Trust Co. of Los Angeles, dated June 24, 1953, clearly indicates that the merchandise covered by the Sims transaction was ordered and actually paid for prior to July 1, 1953. However, whether it was purchased pursuant to a written contract is the particular problem involved herein. In view of the docu-

ments referred to above, it is apparent that a contract or agreement between the importer and Sims was negotiated. Whether the negotiations amounted to a contract, and whether the contract was oral and possibly voidable as being in violation of the statutes of fraud, is not presently before this court.

The evidence relating to the Sims transaction fails to satisfactorily establish that a written contract was entered into prior to July 1, 1953.

We have reviewed the cases of *Helvering, Commissioner of Internal Revenue* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46, *Caroline Mills* v. *Commissioner of Internal Revenue*, 126 Fed. (2d) 857, and *Atlas Supply Co.* v. *Commissioner of Internal Revenue*, 123 Fed. (2d) 356, involving the interpretation of the Revenue Act of 1936, particularly with respect to section 26 (c) (1), which authorized a credit in the computation of a surtax on undistributed earnings when payment of dividends out of such earnings was prohibited by a written contract executed by a corporation which expressly dealt with the payment of dividends. These cases turned upon the question of whether the acts of the corporation constituted an agreement or contract which expressly dealt with payment of dividend. In the instant case, there can be little doubt that negotiations between the importer and Rylands Bros. and Messrs. John Lysaght (Australia) Pty., Ltd., were, in fact, contracts pertaining to the importation of zinc scrap. The only question here is whether or not said contracts were in writing. We have resolved that question in the affirmative under the theory, as heretofore expressed, that a written purchase order containing the necessary elements of a contract accompanied by acceptance, or execution, becomes a written contract. The evidence adduced with respect to this question clearly establishes a written purchase order duly accepted.

For all of the above reasons and based upon the evidence adduced herein, we hold that the merchandise covered by the Rylands and Lysaght transactions are entitled to entry free of duty under the exceptions provided for in Public Law 221, *supra*. As to the merchandise covered by the Sims transactions, the protests are overruled. Judgment will be entered accordingly.