■ GEORGE R. CRONK, Appellant, v METROPOLITAN LIFE INSURANCE COMPANY, Respondent.—Judgment unanimously affirmed, without costs. Memorandum: Plaintiff beneficiary seeks to recover on an insurance policy issued on the life of his brother Edward Cronk, who died on October 4, 1971 as the result of injuries sustained in an accident on September 25, 1971. It does not appear that Edward Cronk regained consciousness between the accident and his death. The policy was purchased by Edward Cronk in May, 1971 through defendant's agent, Herbert Secretti, Jr., and the first monthly premium payment of $9.50 was credited to the premium due on July 1, 1971. On September 28, 1971, 28 days after the grace period had expired for the premium which had been due on August 1, plaintiff's wife delivered to a clerk in defendant's district office a check in payment of the August and September premiums. The check was deposited in the defendant's account. The policy provided for monthly payments to be made on the first day of each month, with a grace period of 31 days, and for reinstatement of the policy upon default and expiration of the grace period "subject to: (a) Production of evidence of insurability satisfactory to the Company; (b) Payment of all overdue premiums". On September 29, 1971 agent Secretti, after conferring with the defendant's district sales manager, informed the defendant's home office by letter that the overdue premiums had been paid; that the insured had been injured and was "in serious condition"; and sought advice as to whether the payment should be retained or a refund check issued. The initial response of defendant's home office was received at the district office on November 4, 1971 and indicated that Secretti's letter would be referred to the "Underwriting Division" for attention. Subsequently, by letter of November 11, 1971, the home office informed the district sales office as follows: "Since premiums you are holding were paid after the grace period, we would need evidence of insurability satisfactory to the company to reinstate the policy. In view of the information contained in your letter of Sept. 29, 1971 we could not reinstate the policy." Defendant formally disclaimed on the policy and refunded the August and September premiums in January, 1972. The trial court found that the payment of premiums in arrears after the expiration of the grace period and without proof of the insurability of the insured did not effectuate reinstatement of the policy. In the circumstances presented, we agree. Plaintiff argues that because agent Secretti was aware of the insured's accident at the time the overdue premiums were paid, his knowledge should be imputed to the

defendant to effectuate reinstatement of the policy. It is clear, however, that the premium payment was accepted by a clerk in defendant's district office and not by agent Secretti. In cases cited by plaintiff, the agent, knowing of the insured's ill health, nevertheless delivered the policy and accepted the premium. It was the agent's act, coupled with the agent's knowledge, that bound the insurer (see, e.g., *McClelland v Mutual Life Ins. Co. of N. Y.*, 217 NY 336; *Bible v John Hancock Mut. Life Ins. Co.*, 256 NY 458). Here the matter of accepting payments at the defendant's office was not under or within the agent's authority (see *Corrigan v Bobbs-Merrill Co.*, 228 NY 58, 69) and his knowledge may not be imputed to the defendant. Plaintiff also contends that the acceptance of the premium payment without attendant proof of insurability proscribes raising the defense of lack of such proof after the death of the insured (see *Equitable Life Assur. Soc. of N. Y. v Brewer*, 225 Ky 472). The rule in this State, however, permits an insurer to retain such premium payments for a reasonable length of time while awaiting proof of insurability, provided that the premiums are held for the benefit of the insured *(Gould v Equitable Life Assur. Soc. of U. S.*, 231 NY 208). Upon receipt of a premium after expiration of the grace period, an insurer may "deal with it in any one of three ways: (1) Accept it unconditionally as a due payment of premium. (2) Return it to the insured. (3) Hold it for the insured pending a possible reinstatement of the policy." *(Divita v New York Life Ins. Co.*, 244 App Div 498, 504, mot for lv to app den 268 NY 722.) It clearly appears here that the premium was held by the defendant for the benefit of the insured. Agent Secretti was never credited with a commission on the premiums (cf. *Divita v New York Life Ins. Co., supra)* and indeed, his letter of September 29, 1971 demonstrates that the payment was being retained pending a determination by the defendant as to whether the policy would be reinstated. Nonetheless, where an insurer receives payment of overdue premiums on a lapsed policy, it has a duty to decide promptly and act quickly on the matter of reinstatement. It has been said that an insurer is charged "with a responsibility for efficient action far greater than is required of the corner grocer" (40 Yale LJ 121, 127; *Steiner v Equitable Life Assur. Soc. of U. S.*, 146 Misc 292, 295-296). While it is clear that the defendant retained the premium payment for a protracted period of time without decision, the important and triggering date was the death of the insured on October 4, 1971, since thereafter the defendant's decision, upon known facts, would have been whether to pay the amount of the policy or to disclaim. Although the record does not reflect the actual date of receipt by the home office of agent Secretti's letter of September 29, 1971, the conclusion is inescapable that at most there passed but a few days between its receipt and the insured's death. In such circumstances, it may not be said that the defendant either waived its rights under the policy or effected its reinstatement. (Appeal from judgment of Onondaga Supreme Court—life insurance.) Present—Dillon, P. J., Cardamone, Schnepp, Doerr and Witmer, JJ.