■ NAB CONSTRUCTION CORP. et al., Appellants, v GREAT AMERICAN INSURANCE COMPANIES, Respondent.—Judgment, Supreme Court, New York County, entered November 22, 1978, denying plaintiffs' motion for summary judgment and granting defendant's cross motion for summary judgment, affirmed, with costs. Of the various points raised by plaintiffs, the only one worthy of discussion is whether the defendant was justified in canceling the comprehensive general liability insurance policy issued to plaintiffs for nonpayment of premiums. To answer this question, it is unnecessary to consider, as plaintiffs concede, whether National acted as plaintiffs' broker or defendant's agent. Likewise, there is no need to reach the issue of whether the plaintiffs were financially responsible for defaults in premium payments due on certain policies issued to the subcontractors on the subject project. Defendant's accounts receivable superintendent has submitted an affidavit and a "spread sheet" tending to prove that the plaintiffs owed $18,769 in premium payments when the notice of cancellation was mailed. In opposition thereto, plaintiff's principal states: "That at the time of such cancellation, plaintiffs had duly paid all premiums relative to such policy of insurance in accordance with the terms of payment contained in such policy." A party opposing a motion for summary judgment must lay bare its proof so that the court can determine whether a trial is warranted *(Pathmark Graphics v J. M. Fields, Inc.* 53 AD2d 531, app dsmd 40 NY2d 1093). In this proceeding, the plaintiffs had the continuing burden of establishing that payment had been made (44 NY Jur, Payment, § 155, p 125). Thus, at Special Term, plaintiffs could have prevailed upon its motion for summary judgment and could have defeated defendant's cross motion for that same

relief by simply submitting a copy of a check or a receipt evidencing the payment of premiums up to and including January of 1977. Instead, the plaintiff failed to submit any documentary evidence to support its claim of payment. Furthermore, it did not even make an attempt to delineate the time and manner in which payment was allegedly effected. Consequently, the defendant's cross motion for summary judgment was properly granted for plaintiffs' failure to show any substance to its bare claim of payment. A passing comment should be made about the defendant's statement of premium adjustment dated June 9, 1977. Plaintiffs maintain that this statement indicates that it had paid excess premiums as of February 21, 1977, the date of cancellation. Even though plaintiffs might have been entitled to a pro rata refund after proper cancellation of the policy, the fact remained that it had defaulted in premium payments at the time the policy was canceled. Concur—Murphy, P. J., Lane and Lupiano, JJ.

Sullivan and Bloom, JJ., dissent in part in a memo by Bloom, J. Plaintiffs, a joint venture, entered into a contract to build the Morgan Station Post Office Facility. To comply with their contract, they were required to obtain certain types of insurance. These were to cover plaintiffs and all of their subcontractors and were to remain in effect for a period of two years after final completion of the project and acceptance thereof by the architect and owner. Plaintiffs obtained the insurance through National Preferred Risks, Inc., (National), which, in turn, placed the insurance with companies affiliated with defendant. By an indorsement to the policy, the 10-day cancellation clause for nonpayment of premiums contained in the printed portion of the policy was amended to 30 days. By agreement set forth in the policy, premiums were to be paid in stipulated installments. On January 20, 1977, defendant transmitted to the State Insurance Fund and to plaintiffs a notice that it was canceling the coverage of plaintiffs for the project in question to become effective 30 days after receipt of the notice of cancellation. As a result, plaintiffs were required to obtain substitute coverage. Since the project was, at that time, approximately 70% complete, the premium cost of the replacement coverage was substantially higher than the balance due to defendant. It is this excess premium which plaintiffs seek to recover in this action. Although the notice of cancellation does not spell out the specific reason therefor, defendant's affidavits make it abundantly clear that it is based on the claim of nonpayment. Plaintiffs, on the other hand, insist that all premiums due had been paid. While the papers are less than precise in this regard, it is fairly inferable that payments were made by plaintiffs to National but that National failed to pay over to defendant. We are not unaware that a broker is, under certain conditions, deemed to be authorized by the insurer to collect premiums on its behalf (Insurance Law, § 121). Hence, proof of payment by plaintiffs to National would be sufficient to bar cancellation for nonpayment. However, under the terms of the policy, it could be canceled for any or no reason. In these circumstances, the relationship of National to defendant, i.e., whether it was a broker or defendant's agent is critical to a determination of whether this open ended right of cancellation was somehow limited. While no signed agency agreement is presented to us, the profit sharing agreement entered into between National and defendant on July 5, 1973, refers to National as the "Agent". So, too, does the "Agency Performance Report" for the period ending June, 1976. Furthermore, the letters of November 19, 1976 and December 6, 1976, relative to the termination of the agency relationship between defendant and National, specifically refer to such relationship. Thus, sufficient is shown to raise a fact question as to that issue. The form agency agreement

used by defendant provides that the agent is authorized to "collect, receive and receipt for on behalf of Company, premiums on insurance policies and bonds". It also provides that, except at the agent's request, no policy of insurance shall be canceled after it has been in effect for 60 days unless for nonpayment of premiums or for other reasons not here germane. Whether this form contract governed the relationship between defendant and National is a critical question of fact which must be determined at trial. In these circumstances, the grant of summary judgment is not warranted. I would modify accordingly.