**AMERICAN CROWN LIFE INSURANCE COMPANY,**
Plaintiff,

v.

**Catherine DICKSON, Roma Poole and Pat O'Brien, as Trustees of The Albert T. Dickson Irrevocable Insurance Trust, Defendants.**

**Catherine DICKSON, Roma Poole and Pat O'Brien, as Trustees of The Albert T. Dickson Irrevocable Insurance Trust, Third–Party Plaintiffs,**

v.

**CROWN LIFE INSURANCE COMPANY, Third–Party Defendant.**

**No. 89 Civ. 2500 (RPP).**

United States District Court, S.D. New York.

Oct. 9, 1990.

LeBoeuf, Lamb, Leiby & MacRae by Ellen August, New York City, for plaintiff and third-party defendant.

Lacher & Lovell–Taylor by Sandy A. Roberts, New York City, for defendants/third-party plaintiffs.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action pursuant to 28 U.S.C. § 2201 seeking a declaratory judgment that a term life insurance policy issued by plaintiff on the life of Albert T. Dickson lapsed for non-payment of premiums prior to the death of the insured and that plaintiff is not obligated to pay the face amount of the policy. Defendants have interposed counterclaims and a third-party claim alleging conspiracy, common law fraud and breach of contract. Plaintiff and the third-party defendant now move for summary judgment pursuant to Fed.R.Civ.P. 56 granting declaratory relief and dismissing defendants' counterclaims and third-party claim. For the reasons set forth below, plaintiff's and third-party defendant's motion is granted.

## BACKGROUND

On August 3, 1984, for consideration of biannual premium payments of $13,971.65, American Crown Life Insurance Company ("American Crown") issued a term life insurance policy, Policy Number 1,920,074 ("the policy"), providing $5 million in coverage to Albert T. Dickson ("Dickson"). Dickson named the Albert T. Dickson Irrevocable Insurance Trust as beneficiary under the policy which was one of three issued by plaintiff to the insured. Effective February 3, 1985, Dickson reduced the policy's coverage to $4 million, to $3 million effective August 3, 1985, and finally to $2 million effective March 3, 1986.

Effective February 3, 1986, Dickson converted from biannual premiums to monthly premium payments of $1884.50. The subsequent March 3, 1986, reduction in the face amount of the policy reduced the monthly premium to $1264.50. The term policy, which did not pay dividends, provided for annual premium increases on the anniversary of the policy. The monthly premiums increased to $1604.50 on August 3, 1986, and to $1904.50 on August 3, 1987. Showman Supp.Aff., Exh. F, p. 3.

The policy issued to Dickson provided *inter alia* for a 31–day grace period for unpaid premiums after which the policy lapsed. The policy also provided that any check or other instrument given in payment which is not honored when presented for payment will not constitute a payment of the premium. The policy further provided that reinstatement after lapse would only be upon evidence that the insured "is insurable on the same basis as when the policy was issued." Kaszycki Aff, Exh. K–4.

American Crown had a separate practice of allowing automatic reinstatement without proof of insurability for an additional twenty-day period beyond the end of the grace period if payment was received from the insured while he was alive. Roenfeldt Aff. ¶ 4.

The premium payment due October 3, 1987, was not received within the 31–day grace period ending November 3, 1987. On November 19, 1987, before the end of the

subsequent 20–day period in which the policy could be reinstated, American Crown received check number 146 from the Albert T. Dickson Trust for $1904.50 which it credited as late payment of the October 3, 1987 premium. American Crown deposited this check but on November 25, 1987, the check was returned by the bank for insufficient funds. American Crown redeposited the check and the bank notified American Crown via a Graphnet message on December 8, 1987, that the check was returned a second time. Kaszycki Aff., Exh. K–6.

Dickson died on November 23, 1987. American Crown and its general agent state that plaintiff had no knowledge of that fact until December 17, 1987. Goodman Aff. ¶ 3.

On November 25, American Crown received from the Trust check number 149 originally dated November 24, 1987,[1] for $1904.50 designated on the memo line as "November Premium." Roberts Aff., Exh. T–28. American Crown credited the check as payment of the premium due November 3, 1987. Plaintiff deposited this check but was notified by Graphnet message on December 3, 1987, that the bank returned this check as well. Kaszycki Aff., Exh. K–10.

Check 149 was not redeposited. The Trustees sent plaintiff a bank check dated December 10, 1987, to replace check number 149. American Crown deposited this check on December 14, 1987. On December 17, 1987, American Crown received check number 150 in the amount of $1904.50 to replace check number 146. Kaszycki Aff. ¶ 21. American Crown states that it learned of Dickson's death for the first time later that day and did not deposit check 150.

The Trustees filed a death claim on the policy in January 1988. On April 18, 1988, American Crown denied the Trustees' claim for benefits under the policy and refunded the $1904.50 premium paid by bank check deposited on December 14, 1987.

Contrary to the facts as alleged by plaintiff, the Trustees claim that prior to non-payment of the October 3, 1987, premium, American Crown had received over-payments of premiums totalling $1886.30. As applied to the policy, this alleged credit for overpayment would have substantially paid the premium due October 3, 1987. In support of this theory, defendants note that at no time during the aforementioned events did American Crown notify them of a lapse or potential lapse of the policy. The Trustees further claim that plaintiff's deposit of the bank check on December 14, 1987, beyond the overall 51–day grace period, constituted a waiver of late payment of the balance due October 3 which kept the policy in force.

In their answer dated October 3, 1989, the Trustees interposed a first counter-claim against American Crown and third-party claim against Crown Life Insurance Company, plaintiff's parent company, for conspiracy and common law fraud. Defendants demanded punitive damages on both claims. The claims allege in substance that American Crown altered its internal records to create the appearance that premium payments were tendered after the policy had lapsed and improperly denied payment of proceeds under the policy. Defendants interposed a second counterclaim against American Crown for breach of the contract of insurance.

## DISCUSSION

To grant a motion for summary judgment a court must find that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law because, after sufficient time for discovery, the non-moving party has failed to make a sufficient showing of an essential element of its case as to which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

---

1. Ruth Powell, Mr. Dickson's secretary, testified in her deposition that she wrote Trust account check number 149 and dated it November 24, 1987. Showman Aff., Exh. S–2. The face of the check shows a "3" superimposed in writing over the "24" on the check's November 24 date. Kaszycki Aff., Exh. K–8.

### 1. Lapse of the Policy

At oral argument, plaintiff's counsel led the Court through a step-by-step accounting of premiums owed and payments received on the policy from its inception August 3, 1984, through December 1987. The accounting is summarized in the Appendix to this opinion. Based on plaintiff's presentation, which included copies of defendants' cancelled checks as well as pertinent exhibits, the Court is convinced that an erroneous credit balance of $1604.50 appeared in the "suspense account" for the policy due to clerical mistake and that no overpayment of premiums existed at all at the time the October 3, 1987, premium became due.[2]

Defendants, who issued and signed the payment checks in question, failed to identify, either in their papers or during argument, a single check, receipt or other instrument or document raising a genuine issue of overpayment which contradicts plaintiff's accounting presentation. In fact, defendants' notations on checks in payment coincide exactly with plaintiff's presentation and defendants have not shown how any credit balance could have developed in the suspense account. The burden of proving payment amounting to overpayment is on the Trustees. *See Nab Constr. Corp. v. Great Am. Ins. Co.*, 70 A.D.2d 559, 416 N.Y.S.2d 815 (App.Div. 1979).

■ The record thus conclusively indicates that the policy lapsed as a result of non-payment of the October 3, 1987, premium. The policy lapsed at the end of the 31–day grace period on November 3, 1987, and no valid payment was made during the 20–day reinstatement period ending November 23, 1987. The only payment received prior to November 23 was check number 146 which was returned for insufficient funds. The policy specifically provided that a dishonored check would not constitute payment of a premium.

Defendants point to several documents to demonstrate that whether the policy lapsed on November 3, 1987, is an issue of fact precluding summary judgment. First, they rely on handwritten notes by Mary Ann DeLuca, an employee of plaintiff, stating that as of November 24, 1987, the policy was paid to December 3, 1987. DeLuca Aff., Exh. D–2. DeLuca reached this conclusion because she noted, "Nov. was paid on 11–25–87." However, the only payment received on November 25 was check number 149 which was dishonored, and the policy specifies that a "bad check" does not constitute payment of a premium. Thus, check number 149 could not have paid the policy to December 3 as DeLuca's notes indicate.[3]

Defendants also rely on a form notice dated December 10, 1987, entitled "Notice of Returned Check", which states:

> The days of grace for payment of unpaid premium will expire on December 23, 1987. If payment is not received by that date your policy will lapse.

Roberts Aff., Exh. T–15. Defendants argue that this document, which was evidently sent after check 149 was dishonored on December 3, 1987, demonstrates that the policy had not lapsed prior to December 23, 1987, and would not lapse until that date. The Notice states that the "unpaid premium" referred to was the premium due November 3, 1987. The Notice is correct in stating that the overall 51–day grace period for the November 3 premium would end on December 23, but the document on its face is not evidence that the November 3 premium was the *first* unpaid premium on the policy, nor is it evidence that the premium previously due on October 3, 1987, was "paid." American Crown did not finally learn that the October 3 premium was an unpaid premium until the bank notified them on December 8, 1987, that check number 146 was returned a second time. Evidently, the form notice upon which defendants are relying was issued without

---

**2.** In fact, a premium debit of $8.50 existed at the time the October 3, 1987, premium was due. For the purposes of this motion, this debit balance is negligible.

**3.** It seems clear that DeLuca made the notation without anticipating the check would bounce.

knowledge of that dishonor and without notice of the decedent's death.

■ Defendants also argue that plaintiff's acceptance and deposit of the bank check dated December 10, 1987, in replacement of check number 149, as a payment of premiums constituted a waiver by plaintiffs of late payment. Defendants rely on *Cronk v. Metropolitan Life Ins. Co.*, 69 A.D.2d 977, 416 N.Y.S.2d 104 (App.Div. 1979), which states:

> Upon receipt of a premium after expiration of the grace period, an insurer may 'deal with it in any one of three ways: (1) Accept it unconditionally as a due payment of premium. (2) Return it to the insured. (3) Hold it for the insured pending a possible reinstatement of the policy.'

416 N.Y.S.2d at 106 (*citing Divita v. New York Life Ins. Co.*, 244 A.D. 498, 279 N.Y.S. 900 (App.Div.1935). Defendants argue that since plaintiff never notified them of a lapse, the policy remained in force and plaintiff's acceptance of the bank check on December 10, 1987, was an unconditional acceptance of the check as a "due payment of premium" under *Cronk* and a concomitant waiver of late payment.

Defendants mischaracterize the effect of "unconditional acceptance" under *Cronk*. *Divita*, the case in which the three options were first enunciated, continues:

> Under option No. 1 the company waives the lapse, and under option No. 2 it insists upon it. Under option No. 3 it holds the premium as trustee for the insured, in the meantime waiving none of its rights.

279 N.Y.S. at 907. Thus it is clear that unconditional acceptance of late payment by the insurer under option No. 1 acts not as a waiver of late payment, as defendants contend, but rather as a waiver of lapse. In this case, the policy provided that reinstatement after lapse would only be upon evidence that the insured "is insurable on the same basis as when the policy was issued." Since the insured was no longer alive on December 10 and in fact had been dead for over two weeks when plaintiff accepted the bank check, no evidence could be provided that the insured was insurable on the same basis as when the policy issued and no employee of plaintiff had the power to waive the lapse at that time. Such a provision in an insurance policy is legal in New York. *See Scott v. American Republic Life Ins. Co.*, 88 A.D.2d 949, 451 N.Y. S.2d 190 (App.Div.1982) (the insurer is free to impose conditions on reinstatement after lapse which, if not complied with, preclude reinstatement under any circumstances).[4]

In these circumstances, it is irrelevant whether plaintiff knew or did not know of the insured's death on December 10 when it accepted the bank check because it lacked the power to reinstate the policy. No genuine issue of material fact precluding summary judgment is raised by allegations involving plaintiff's knowledge of the insured's death.

### 2. Counterclaims and Third–Party Claim

Because summary judgment has been granted declaring the policy lapsed, plaintiff is entitled to summary judgment as a matter of law on defendants' second counterclaim for breach of contract of the policy of insurance.

Plaintiff and third-party defendant are also entitled to summary judgment as a matter of law on the first counterclaim and third-party claim. A cause of action alleging conspiracy to defraud the insured of proceeds under an insurance policy is legally insufficient since one party to a contract does not have a cause of action against another party to the contract for conspiracy to breach the agreement between them. *Mastro Jewelry Corp. v. St. Paul Fire and Marine Ins. Co.*, 70 A.D.2d 854, 418 N.Y.S.2d 44 (App.Div.1979). *See generally, Bereswill v. Yablon*, 6 N.Y.2d 301, 189 N.Y.S.2d 661, 160 N.E.2d 531 (1959),

---

**4.** Plaintiff acknowledges that it had a practice of not requiring *evidence* that the insured was insurable on the same basis as when the policy was issued during the 20–day reinstatement period, but this practice only applied to payments by the insured while he was alive. Roenfeldt Aff. ¶ 4; Kaszycki Aff. ¶ 7. For defendants to argue it should apply to payments on behalf of a deceased insured is not credible.

*reh'g denied*, 6 N.Y.2d 301, 189 N.Y.S.2d 661, 160 N.E.2d 531 (1959).

Defendants claim for punitive damages on the first counterclaim and the third-party claim is inappropriate. A claim for punitive damages against an insurer must contain "sufficient evidentiary allegations of ultimate facts of a fraudulent and deceitful scheme in dealing with the general public as to imply a criminal indifference to civil obligations." *Holoness Realty Corp. v. New York Property Ins. Underwriting Ass'n*, 75 A.D.2d 569, 427 N.Y.S.2d 264 (App.Div.1980). *See also Durham Indus., Inc. v. North River Ins. Co.*, 673 F.2d 37, 41 (2d Cir.), *cert. denied*, 459 U.S. 827, 103 S.Ct. 61, 74 L.Ed.2d 64 (1982). Defendants have made no such allegations in the first counterclaim or third-party claim.

## CONCLUSION

Accordingly, it is hereby declared that Policy No. 1,920,074, issued by plaintiff American Crown Life Insurance Company on the life of Albert T. Dickson lapsed due to non-payment of premiums prior to the death of the insured on November 23, 1987. It is further declared that plaintiff is not obligated to pay the face amount of the policy to defendants. Defendants' counterclaims and third-party claim are dismissed.

SO ORDERED.

## APPENDIX

| Premium Due Date | Type of Billing | Amount of Premium | Amount Paid | Check Number | Check Date[1] | Premium Balance |
|---|---|---|---|---|---|---|
| 8–3–84 | semi-annual | $13,971 | $13,971 | ———— | undisputed | ———— |
| 2–3–85 [2] | " | $11,178 | $11,174 | 1 | 2–25–85 | −$ 4.00 |
| 8–3–85 [3] | " | $10,698 | $10,693 | 103 | 8–28–85 | −$ 9.00 |
| 2–3–86 | monthly | $1894 | — | — | — | −$1903.00 |
| 3–3–86 [4] | " | $1264.50 | $3012.67 | 106 | 3–12–86 | −$ 154.83 |
| 4–3–86 | " | $1264.50 | $2041.33 | 109 | 4–20–86 | +$ 622.00 |
| 5–3–86 | " | $1264.50 | — | — | — | −$ 642.50 |
| 6–3–86 | " | $1264.50 | $1523.46 | 112 | 6–14–86 | +$ 616.46 |
| 7–3–86 | " | $1264.50 | — | — | — | −$ 648.04 |
| 8–3–86 | " | $1604.50 | $2244.04 | 115 | 8–30–86 | −$ 8.50 |
| 9–3–86 | " | $1604.50 | $1604.50 | 1072 | 10–2–86 | −$ 8.50 |
| 10–3–86 | " | $1604.50 | $1604.50 | 119 | 10–31–86 | −$ 8.50 |
| 11–3–86 | " | $1604.50 | $1604.50 | 121 | 12–1–86 | −$ 8.50 |
| 12–3–86 | " | $1604.50 | $1604.50 | 124 | 1–1–87 | −$ 8.50 |
| 1–3–87 | " | $1604.50 | $1604.50 | — | — | −$1613.00 |
| 2–3–87 | " | $1604.50 | $3209.00 | 127 | 3–14–87 | −$ 8.50 |
| 3–3–87 | " | $1604.50 | $1604.50 | 131 | 4–15–87 | −$ 8.50 |
| 4–3–87 | " | $1604.50 | $1604.50 | — | — | −$1613.00 |
| 5–3–87 | " | $1604.50 | $3209.00 | 134 | 5–31–87 | −$ 8.50 |
| 6–3–87 | " | $1604.50 | $1604.50 | 135 | 7–1–87 | −$ 8.50 |
| 7–3–87 | " | $1604.50 | $1604.50 | 139 | 8–1–87 | −$ 8.50 |
| 8–3–87 | " | $1904.50 | $1904.50 | 142 | 9–11–87 | −$ 8.50 |
| 9–3–87 | " | $1904.50 | $1904.50 | 145 | 10–20–87 | −$ 8.50 |
| 10–3–87 | " | $1904.50 | $1904.50 | 146 [5] | 10–2–87 | −$ 8.50 |

1 Entries are dates as they appeared on the face of each check.

2 Policy coverage reduced to $4 million.

3 Policy coverage reduced to $3 million.

4 Policy coverage reduced to $2 million.

5 Check returned for insufficient funds. Despite their numerical sequence, check number 146 bears a date eighteen days before check number 145 although it was received by American Crown on November 19, 1987.