In the Matter of TANENBAUM TEXTILE Co., INC., Respondent, against HYMAN SCHLANGER, Trading under the Name of MIAMI KNITTING MILLS, Appellant.

Argued January 8, 1942; decided March 5, 1942.

*Morton G. Rosenberg, Malcolm R. Lawrence, Jr.,* and *Norton M. Levine* for appellant. There is no written con-

tract to arbitrate between the parties, as required by section 1449 of the Civil Practice Act. (*Duncan* v. *Wohl, South & Co.*, 201 App. Div. 737; *Altkrug* v. *Whitman Co.*, 185 App. Div. 744; *Guillaume* v. *General Transportation Co.*, 100 N. Y. 491; *Swift* v. *Pacific Mail S. S. Co.*, 106 N. Y. 206; *Sturtevant* v. *Cumberland, Dugan & Co.*, 106 Md. 587; *Pennington Grocery Co.* v. *Wood & Co.*, 97 Okla. 220; 1 Williston on Contracts, § 90 (c); *Dale* v. *See*, 51 N. J. L. 378; *Dows* v. *National Exchange Bank*, 91 U. S. 618; *Tradesmen's Nat. Bank* v. *National Surety Co.*, 169 N. Y. 563; *Barker* v. *Bradley*, 42 N. Y. 316; *Matter of Amalgamated Association of Railroad Employees*, 196 App. Div. 206.) Neither claimed custom of the trade nor alleged conduct of the parties is sufficient to meet the statutory requirement of a written contract to arbitrate. (*Hart* v. *Cort*, 165 App. Div. 583; *Lawrence* v. *Maxwell*, 53 N. Y. 19; *Hopper* v. *Sage*, 112 N. Y. 530.)

*Nat C. Helman* and *Leon A. Beeman* for respondent. The agreement to arbitrate is valid and satisfies the provisions of sections 1448 and 1449 of the Civil Practice Act. (*Matter of Japan Cotton Trading Co.* v. *Farber*, 233 App. Div. 354; *Matter of Exeter Mfg. Co.* v. *Marrus*, 254 App. Div. 496; *Matter of Marshall* v. *Fox Theatres Corp.*, 147 Misc. Rep. 4.) The evidence amply sustains the finding that an agreement exists between the parties providing for arbitration of disputes arising out of the sales. (*Esterly* v. *Cole*, 3 N. Y. 502; *Newhall* v. *Appleton*, 114 N. Y. 140; *Walls* v. *Bailey*, 49 N. Y. 464; *Eighmie* v. *Taylor*, 98 N. Y. 288; *Thomas* v. *Scutt*, 127 N. Y. 133; *Newburger* v. *American Surety Co.*, 242 N. Y. 134.)

LOUGHRAN, J. During a period beginning on April 10 and ending on June 7, 1940, Tanenbaum Textile Co., Inc., a domestic corporation, on twenty several occasions sold and delivered a quantity of textiles to Hyman Schlanger, trading under the name Miami Knitting Mills. A controversy between them having subsequently arisen out of these transactions, the Tanenbaum Company demanded that it

be settled by arbitration. Contrariwise Schlanger commenced an action in the Supreme Court for an adjudication of their differences. Thereupon the Tanenbaum Company moved for an order directing arbitration. By his answer, Schlanger denied the existence of a contract to arbitrate. This issue was tried before the court without a jury. Finding that " a specific agreement exists between the parties to settle by arbitration all controversies arising from the sale of these goods," the court ordered them to proceed to arbitration before a named tribunal and stayed the action commenced by Schlanger in the Supreme Court. From an affirmance of this order by a divided vote of the Appellate Division, Schlanger has now appealed as of right to this court.

"A contract to arbitrate a controversy thereafter arising between the parties must be in writing." (Civ. Prac. Act, § 1449.)

The president of the Tanenbaum Company was the only witness on the trial. Since a great deal turns on his undisputed testimony, we quote it: " Q. You would get an order from Mr. Schlanger, either by telephone or personally on your visit and you would go back and ship that order to Mr. Schlanger? A. That is right. Q. Frame it in your own way. Tell us what took place. A. We simply typed the invoice up, sent it to Mills Factors and they would check the amount in dollars and cents, and * * * put it in an envelope and mail it to the customer. Q. And that would be done after the goods were shipped to Mr. Schlanger? A. As a rule, yes. Q. You have had certain business dealings with Mills Factors Corporation, is that right? A. Yes, sir. Q. They are a banking concern? A. That is correct. Q. And each of these accounts had been assigned to the Mills Factors Corporation? A. That is right. Q. When payment is made by the customer, it is made direct to Mills Factors Corporation under your arrangement, is that right? A. That is right. Q. And when these items were not paid, what happened to these accounts? A. The account is charged back to our account with Mills Factors. Q. And

somebody at Mr. Schlanger's place would receive those goods, is that correct? A. Yes, I believe so. Q. And you would get a receipt from Mr. Schlanger? A. That is true. Q. During all of the time that you took orders from Mr. Schlanger, personally or over the telephone, did you ever talk with him about arbitration on any specific invoice? A. No. I never speak to a customer about arbitration. It would be bad policy."

The receipts which Schlanger gave on delivery of the goods to him were in a form which is illustrated by this exhibit: "'Received from Tanenbaum Textile Co., Inc., 460 Fourth Avenue for Miami Ktg in good order the following: (3) Rolls." Each of the invoices that were sent to Schlanger on behalf of the Tanenbaum Company by Mills Factors Corporation restates the individual transaction in a form of which the following is a specimen: "Sold to Miami Knitting Mills 6 West 18th St. N. Y. C. Style C 22 Jersey White 31 lbs. Aqua 19–6. Pink 27–8 ———— 77 7 /8 lbs @ .62 per pound 48.29."

On each invoice there had been stamped in red ink the words: "All controversies arising from the sale of these goods are to be settled by arbitration." Schlanger retained all the invoices. Cryptic entries made thereon are enough to indicate that cross-entries were made in his books.

The foregoing, we believe, is a full and accurate statement of the facts. The reason for the decision made below is phrased as follows: " The courts have frequently held that a party by receiving and retaining, without objection, under certain circumstances, a written contract signed by the other party, may be held bound by the terms of such writing, though he himself has not signed. * * * The invoices included all the terms of the completed contracts. They completely evidenced the agreements which were fully consummated by the parties, except for compliance with the provision concerning arbitration." We take another view.

It is true that acceptance of a document which plainly purports to be a contract gives rise to an implication of

assent to its terms despite ignorance of the content thereof. (*Murray* v. *Cunard Steamship Co.*, 235 N. Y. 162; 1 Williston on The Law of Contracts [Rev. ed.], §§ 90A, 90B.) But that is not this case. An invoice, as such, is no contract. An invoice is a mere detailed statement of the nature, quantity and the cost or price of the things invoiced. (*Sturm* v. *Baker*, 150 U. S. 312, 328, 340, 341; 17 Am. & Eng. Ency. of Law [2d ed.], pp. 478, 479. )

Each of the transactions in question was executed in accordance with an agreement that had been made without mention by either party of the subject of arbitration. It was not until that stage had been reached in each instance that the invoice was made out and stamped with the words " All controversies arising from the sale of these goods are to be settled by arbitration." The whole question is thus one of the effect of Schlanger's silence in the face of such separate offers for arbitration, each of which looked back to a single sale and delivery theretofore made.

The applicable principles have been stated by this court in this manner: " A party cannot be held to contract where there is no assent. Silence operates as an assent and creates an estoppel only when it has the effect to mislead   *   *   * When a party is under a duty to speak, or when his failure to speak is inconsistent with honest dealings and misleads another, then his silence may be deemed to be acquiescence.   *   *   *   And it may be added that a person is under no obligation to do or say anything concerning a proposition which he does not choose to accept.   *   *   *   There must be actual acceptance, or there is no contract." (*More* v. *New York Bowery Fire Ins. Co.*, 130 N. Y. 537, 545, 547. See the cases collected in 77 A. L. R. pp. 1141–1153. Cf. *National Union Fire Ins. Co.* v. *Ehrlich*, 122 Misc. Rep. 682.) Tested by these standards, the case for the Tanenbaum Company, in our judgment, fails to meet either letter or spirit of the explicit command of the statute that, "A contract to arbitrate a controversy thereafter arising between the parties must be in writing."

The orders should be reversed and the proceeding dismissed, with costs to the appellant in this court and in the Appellate Division.

LEHMAN, Ch. J., FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Orders reversed, etc.