Leonard H. Sandler, J.
Defendant, William Citron, Inc., an insurance broker, placed a policy of' insurance with National Fire Insurance Company through its then agent, Boro Hall *61 Agency, Inc., the plaintiff. The premium was advanced by a finance company, and paid to plaintiff as agent.
Following acceptance of the policy, and payment of the premium, a commission check was mailed to the defendant, which bore on the reverse side, the following stamped legend:
“ IN CASE OF CANCELLATION THE UNDERSIGNED AGREES TO RETURN THE UNEARNED COMMISSION ’ ’.
Significantly, the legend was not stamped on the check across the top in the usual manner of indorsements but was affixed to the side of the check, so that the words could be read only if the check was turned on its side.
Not accompanied by any letter inviting the defendant’s attention to the legend, the check was received by the defendant’s bookkeeper, who affixed the defendant’s indorsement to the check on the reverse side and caused it to be deposited. The bookkeeper, whose duties included the receipt and deposit of commission checks, denied having seen the legend involved here, or indeed any legend of that character at any time.
Following cancellation of the policy by the insurance company, plaintiff first demanded and now sues for return of the ‘ ‘ unearned ’ ’ portion of the commission.
The question here presented is whether the defendant became contractually obligated to refund the “ unearned ” part of the commission in the event of cancellation when its bookkeeper affixed its stamp to the commission check and caused it to be deposited.
Preliminarily, it is not disputed that, in the absence of a special agreement, a brokerage commission is earned when the broker brings about the relationship of insurer and insured (29 N. T. Jur., Insurance, § 485) and that accordingly the defendant had earned its commission prior to the receipt of the check.
Plaintiff contends that the general rule has been modified with regard to financed policies by an industry-wide custom under which brokers placing such policies are regularly asked to agree, and do agree, to return the ‘ ‘ unearned ’ ’ part of the commission in event of cancellation. The defendant denies the existence of any such industry-wide custom, and the evidence in this case does not permit a finding that the plaintiff has sustained its burden of proof on this issue. More importantly, however, the evidence clearly negates the existence of an industry-wide custom under which an agreement to refund is presented for the first time to the broker in the form of a stamped legend on an already earned commission check.
*62 In considering the legal consequences of the sequence of events described above, I have accepted as factually accurate the testimony of the bookkeeper that she had not read the legend in question (indeed had never seen a legend of that character), and that she had not intended to bind her employer to the contractual obligation here sought to be enforced. That she had not examined the words in question is surely not surprising.
The receipt of commission checks in the office of an insurance broker may safely be assumed to be a quite common event of the kind that is dealt with in an automatic and routine way. Never having seen such a legend, the bookkeeper was not alert to the possibility of its presence. No letter accompanied the check inviting attention to the legend, although the substance of it had not been discussed by the parties previously; and it represented an effort to engraft a condition upon the deposit of funds that had already been earned. The awkward and irregular placement of the legend undoubtedly reduced the likelihood that it would be read.
These findings indicate the nature of the legal issue presented.
It is fundamental that an effective contract does not come into existence until both parties have assented to its terms. (9 N. Y. Jur., Contracts, §§ 15,16.)
An important corollary to this is that one who has signed a contract or has otherwise manifested agreement will not normally be heard to say that he was unaware of provisions to which he had manifested assent. (9 N. Y. Jur., Contracts, § 59.)
To the latter doctrine, several well-defined exceptions have developed, which reflect considerations of basic justice and fair dealing, and the common principle of which seems clearly applicable to this case.
One familiar exception, not squarely in point here but both relevant and persuasive, is that a party should not be bound by terms written on the reverse of a document to which his attention was not drawn and of which he was not in fact aware. (Tri-City Renta-Car & Leasing Corp. v. Vaillancourt, 33 A D 2d 613 [3d Dept., 1969], and cases cited.)
Even closer to the instant case is the holding of the New York Court of Appeals in Matter of Tanenbaum Textile Co. v. Schlanger (287 N. Y. 400 [1942]), where legal effect was denied an arbitration clause stamped on an invoice accompanying goods delivered pursuant to an order previously made and accepted. The Court of Appeals pointed out (at pp. 403-404): “ It is true that acceptance of a document which plainly purports to be a contract gives rise to an implication of assent to its terms *63 despite ignorance of the content thereof * * * But that is not this case * * * An invoice as snch, is no contract ’ ’.
The commission check here involved, with the legend stamped in an irregular manner on the reverse side, is strikingly similar both practically and legally to the invoice in the Tanenbaum case (supra) and its stamped arbitration clause. The circumstance that the check was here indorsed for deposit does not seem to me to be a legally significant distinction in the context of all the facts.
The further words of the court in the Tanenbaum case (at p. 404) are very much to the point: “‘A party cannot be held to contract where there is no assent * * * There must be an actual acceptance or there is no contract. ’ ’ ’
Judgment may accordingly be entered for the defendant.