Irving P. KARLIN, Plaintiff-Appellant,

v.

Warren E. AVIS and Avis Industrial Corporation, Defendants-Appellees.

No. 489, Docket 71–2084.

United States Court of Appeals, Second Circuit.

Argued Feb. 1, 1972.

Decided March 10, 1972.

Jacob E. ·Heller, New York City (Joseph Heller, New York City, on the brief), for plaintiff-appellant.

William S. Greenawalt, New York City (Royall, Koegel & Wells), New York City, for defendants-appellees.

Before HAYS and OAKES, Circuit Judges, and CLARIE, District Judge.[*]

OAKES, Circuit Judge:

Plaintiff-appellant Irving Karlin sought below to recover from each defendant a "finder's fee" for his role in the sale of Avis Industrial Corporation (Industrial) stock to Ultra Dynamics Corporation (Ultra).[1] Judge Bartels, 332 F.Supp. 957, granted defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56(b). We affirm.

The stock was held in part by Industrial as treasury stock and in part by Warren E. Avis (Avis),[2] owner of a controlling interest in Industrial. Appellant received from Ultra 9,000 shares of its common stock as his finder's fee, but he contends that at most this stock constituted only one-half of his fee, with Avis and Industrial obligated to furnish the remaining one-half.

Despite disagreement between the parties as to whether appellant or Industrial officials first broached the idea of selling stock in Industrial to Ultra, it is agreed that appellant brought together Industrial officials and Ultra officials. The question is whether defendant Industrial or defendant Avis ever agreed to pay a finder's fee to appellant. The lower court concluded that no writing existed sufficient to bind Avis or Industrial under the New York Statute of

---

[*] Of the District of Connecticut, sitting by designation.

1. Pursuant to 28 U.S.C. § 1441(a) this action was removed from the New York Supreme Court.

2. The distinction between Avis individually and Avis Industrial must be kept clear in order to understand appellant's arguments regarding each.

Frauds on finder's fees. N.Y.Gen.Oblig. Law § 5–701(10) (McKinney 1964).

The underlying facts are not in dispute. On October 15, 1968, appellant introduced officials of Industrial and Ultra. Prior to that meeting, Richard H. Weisinger, chairman of the board of Ultra, signed a letter in which he agreed that, if Ultra acquired control of Industrial by purchasing stock from Avis, appellant would receive a five per cent commission, half paid by Ultra as buyer and half by Avis personally, as seller of the stock. Avis was not a party to this arrangement. At the October 15 meeting Sidney McNiece, an officer of Industrial, told appellant that Avis as an individual would under no circumstances pay any part of a finder's fee. A letter of October 16, 1968, from appellant to Thomas Ault, president of Industrial, noted the agreement between Weisinger and appellant; Ault did not respond to that letter. One month later, on November 16, appellant sent a letter to McNiece of Industrial, in which he enclosed a letter of October 28 from Weisinger to Avis. The Weisinger letter to Avis proposed that Ultra and Avis split the finder's fee cost evenly between them, and contained a blank for Avis's signature of agreement. Avis did not sign, and McNiece told Weisinger over the telephone that Avis had rejected the idea.

Negotiations regarding purchase of the stock continued despite the disagreement over the finder's fee. On January 9, 1969, at a meeting between Ultra and Avis representatives, the possibility that Ultra might purchase treasury stock directly from Industrial (as opposed to purchasing from Avis individually) was discussed. Appellant, who was not present at the January 9 meeting, was told within a week about the new purchase possibility and about Avis's continuing refusal to pay any part of the finder's fee. During a meeting between Avis's and Ultra's representatives in Detroit on January 16, 1969, Avis and Ultra reached a tentative sales agreement of which appellant, who was present at the meeting place, was advised. At the same time, after negotiating with Messrs. Reich and Weisinger of Ultra, appellant signed an agreement in which he agreed to accept 9,000 shares of Ultra common stock as ". . . full consideration . . ." for his work as finder "[i]n connection with the agreements between you [Ultra] and Warren E. Avis *and* you and Avis Industrial Corporation . . . ." [Emphasis supplied.] [3]

Ultra then signed sales agreements with Avis personally and with Industrial. The agreement between Ultra and Avis mentioned the finder's fee in a way adverse to appellant's claim:

2(c). You [Avis] have not dealt with any broker or finder in connection with the sale of the shares, other than Mr. Irving P. Karlin.

\* \* \* \* \* \*

15. We [Ultra] acknowledge that no broker or finder has been involved in our negotiations except Mr. Irving P. Karlin. We agree that we shall pay in full the finder's fee payable to Mr. Karlin upon final consummation of this transaction.

The agreement between Ultra and Industrial did not mention the finder's fee.

---

3. The full text of the January 16, 1969, agreement reads:

January 16, 1969

Ultra Dynamics Corporation
Two Wait Street
Paterson, New Jersey
Gentlemen:

In connection with the agreements between you and Warren E. Avis and you and Avis Industrial Corporation I have acted as finder. In full consideration thereof I agree to accept Nine Thousand (9,000) Shares of Common Stock, $.10 par value, of Ultra Dynamics Corporation and do hereby release you from any and all further claims thereunder. Such payment to me shall be paid upon final consummation of the foregoing transaction.

/s/ IRVING P. KARLIN
Irving P. Karlin

Agreed and Accepted.
/s/ ULTRA DYNAMICS
CORPORATION

On November 10, 1969, plaintiff accepted the 9,000 shares of Ultra, the certificate for which marked the shares as restricted stock.[4] On July 19, 1971, some 2½ years after agreeing to accept the stock as full compensation, appellant for the first time claimed, in a letter to Weisinger of Ultra, that the restricted stock "was not in accordance with our agreement." That letter came when Ultra's stock had dropped to about $1 per share from its $12⅛ value at the time of transfer to appellant in 1969. This suit followed shortly after the July 19 letter.

■ We agree with Judge Bartels that the New York Statute of Frauds is applicable to this case. Minichiello v. Royal Business Funds Corp., 18 N.Y.2d 521, 277 N.Y.S.2d 268, 223 N.E.2d 793, (1966), cert. denied, 389 U.S. 820, 88 S.Ct. 41, 19 L.Ed.2d 72 (1967). Appellant argues here for the first time that the pertinent section of the statute [5] applies only to the sale of a majority interest in a corporation's stock. *Minichiello* explicitly rebuts this argument by its conclusion that the phrase "including a majority of the voting stock interest" in the statute explains one aspect of, rather than restricts the meaning of, the statutory language concerning sales ". . . of a business opportunity

. . . ." 18 N.Y.2d at 527–528, 277 N.Y.S.2d at 272, 223 N.E.2d at 796.

While Morris Cohon & Co. v. Pennsylvania Coal & Coke Corp., 10 A.D.2d 667, 668 (1st Dep't 1960), contains language to the contrary, it was effectively overruled by *Minichiello, supra,* and explicitly by Clivner v. Ackerman, 51 Misc.2d 856, 857, 274 N.Y.S.2d 112, 114 (Sup.Ct. 1966), aff'd, 30 A.D.2d 642, 291 N.Y.S.2d 759 (1st Dep't 1968) (mem.). *Clivner* concluded that:

> [W]here . . . the transfer of the minority interest is coupled with other circumstances so as to clothe the purchaser with the right to dictate the business policies of the corporation, it exceeds the realm of simple investment and becomes a transfer of a business or business opportunity within the meaning of the statute. 51 Misc.2d at 857–858, 274 N.Y.S.2d at 114–115.

The sale of Avis's stock which comprised about 43 per cent of the stock of Industrial, meets the statutory requirement for a "business opportunity" as set forth in *Clivner, supra.* Other pre-*Minichiello* and *Clivner* cases cited by appellant [6] are inapposite in light of the later cases.

Further, because appellant seeks to recover from both Avis and Industrial, the

---

4. The restriction, prohibiting sale in the absence of registration with the SEC, was the usual one relating to unregistered shares within the terms of section 5 of the Securities Act of 1933, 15 U.S.C. § 77e.

5. The section of the statute governing finder's fees and related transactions reads:

Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

. . . . .

10. Is a contract to pay compensation for services rendered in negotiating a loan, or in *negotiating the purchase, sale,* exchange, renting or leasing of any real estate or interest therein, or *of a business opportunity,* business, its

good will, inventory, fixtures or an interest therein, *including a majority of the voting stock interest in a corporation* and including the creating of a partnership interest. "Negotiating" includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. This provision shall apply to a contract implied in fact or in law to pay reasonable compensation but shall not apply to a contract to pay compensation to an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman. N.Y.Gen.Oblig.Law § 5–701(10) (McKinney 1964). [Emphasis supplied.]

6. Braverman v. Metropolis Bowling Centers, Inc., 18 A.D.2d 1089, 239 N.Y.S.2d 581 (2d Dep't 1963); Wells v. Dent, 4 A.D.2d 307, 164 N.Y.S.2d 646 (4th Dep't 1957).

two blocks of stock that were sold to Ultra could be combined for purposes of determining applicability of the statute, in which case a majority of the voting stock interest would be involved.

The Statute of Frauds requires a memorandum in writing ". . . subscribed by the party to be charged . . .," and appellant has produced no such writing. To support his claim, appellant points to several documents and legal arguments, which will be considered separately and together.

■ The first documents concern the claim against Avis personally. The January 16, 1969, Avis-Ultra agreement, quoted in note 3 *supra,* obligates Ultra, not Avis, to pay the full finder's fee, and thus can in no way support appellant's claim against Avis. Morris Cohon & Co. v. Russell, 23 N.Y.2d 569, 297 N.Y.S. 2d 947, 245 N.E.2d 712 (1969), does not aid appellant. The agreement there stated that the defendant seller would indemnify the buyer for any finder's fee; here, the *buyer* explicitly agreed to pay, and neither seller can be held. Appellant argues, as he did not below, that the January 16 agreement, which mentions the finder's fee, somehow removes the case from the Statute of Frauds. Because there is nothing in the January 16 agreement acknowledging Avis's intent to be bound by an oral agreement regarding division of payment of the fee with Ultra (in fact quite the opposite is the case), appellant is not assisted by cases holding that writings signed by the party to be charged which *acknowledge* the making of an oral contract may satisfy the Statute of Frauds. *See, e. g.,* Townsend v. Hargraves, 118 Mass. 325, 334–335 (1875); Argus Co. v. Mayor of Albany, 55 N.Y. 495, 14 Am.Rep. 296 (1874). The market price for Ultra stock at the time it was accepted by Karlin in payment of his finder's fee was in excess of $108,000 although he would have been entitled to $140,000 had Avis

agreed to his proposal. It seems apparent that he negotiated this with Ultra in view of Avis's unwillingness to pay him anything, and in hopes that the price of Ultra stock would advance.

■ Appellant attempts to meet the memorandum requirement as to Avis by contending that all writings in the case, including the January 16 agreement, taken together are sufficient to bind the defendants. As did the district court, we find this unconvincing. The letters sent to Industrial officers that mentioned the splitting of the finder's fee between Ultra and Avis were unanswered by Avis.

■ Appellant is therefore reduced to the contention that Avis was under a duty to reply to these letters and that the failure to reply constitutes acquiescence in appellant's fee proposal. There are several answers to this claim. Finder's fees generally are allowed only upon a showing of affirmative written evidence of assent to paying the fee by the person to be charged. *See Minichiello, supra,* 18 N.Y.2d at 526–527, 277 N.Y.S.2d at 272, 223 N.E.2d at 796. No such affirmative action was taken by Avis. On the contrary, appellant was informed several times that his proposal was rejected by Avis, most pointedly by Avis's failure to sign the proposal sent to him by Weisinger on October 28, 1968. These rejections hardly constitute silence within appellant's theory of silence constituting acceptance. Further, assuming arguendo that Avis was under a duty to speak, he did speak, and his verbal responses to written proposals were proper. Gray v. Kaufman Dairy & Ice Cream Co., 162 N.Y. 388, 397–398, 56 N.E. 903, 905–906 (1900); Learned v. Tillotson, 97 N.Y. 1, 12, 49 Am.Rep. 508 (1884). The cases relied upon by appellant [7] show only that silence may equal acquiescence in special circumstances, *e. g.,* when an oral contract already exists, which was not the case here. In New York silence as ac-

---

. Megarry Bros., Inc. v. United States, 404 F.2d 479 (8th Cir. 1968); Hellenic Lines, Ltd. v. Gulf Oil Corp., 340 F.2d

398 (2d Cir. 1965); Willard Helburn, Inc. v. Spiewak, 180 F.2d 480 (2d Cir. 1950).

ceptance generally arises only when the effect of silence is to mislead the other party, Tanenbaum Textile Co. v. Schlanger, 287 N.Y. 400, 404, 40 N.E.2d 225, 227 (1942); More v. New York Bowery Fire Insurance Co., 130 N.Y. 537, 545, 29 N.E. 757, 758–759 (1892), an effect neither alleged nor shown here. An offeror has no power to transform an offeree's silence into acceptance when the offeree does not intend to accept the offer, Albrecht Chemical Co. v. Anderson Trading Corp., 298 N.Y. 437, 84 N.E.2d 625 (1949); Avis's intent was clearly not to accept appellant's fee proposal. The New York law on silence as acceptance is firmly supported by the Restatement of Contracts.[8]

None of the documents relied upon by appellant was prepared or signed by Avis. In New York unsigned writings prepared by a plaintiff, without more, do not suffice to bind a defendant. Solin Lee Chu v. Ling Sun Chu, 9 A.D.2d 888, 889, 193 N.Y.S.2d 859, 860 (1st Dep't 1959). Crabtree v. Elizabeth Arden Sales Corp., 305 N.Y. 48, 110 N.E.2d 551 (1953), cited by appellant, involved three documents, consistent with one another, prepared by the defendant in that case, only two of which were signed. Defendant was held to be bound by his own documents. Here, the unsigned letters prepared by plaintiff, not defendants, proposed a split in the fee while the signed Avis-Ultra agreement placed the burden of paying entirely on Ultra.

Appellant also points to certain alleged written "admissions" made by appellees in their answer and summary judgment affidavits. These "admissions," appellant contends, at least when combined with the other writings discussed above, constitute the writing necessary to bind Avis. But these "admissions" do nothing more than admit certain undisputed facts—e. g., the role of McNiece as Avis's representative and the occurrence of negotiations between appellant and Avis; nowhere do they mention any agreement by Avis to pay a finder's fee.

Appellant also seeks to recover a fee from Industrial in the face of his agreement with Ultra, see note 3 *supra*, despite the absence of any correspondence between Industrial and himself on this subject, and despite the absence of any reference to a finder's fee in the Industrial-Ultra sales agreement of January 16, 1969. He relies on Bradkin v. Leverton, 26 N.Y.2d 192, 309 N.Y.S.2d 192, 257 N.E.2d 643 (1970), a case in which there was (1) a valid written contract obligating defendant to pay a finder's fee and (2) interference with that contract by an officer of defendant corporation to plaintiff's detriment. Here, neither of these circumstances essential to the holding of *Bradkin, supra*, existed.

8. ACCEPTANCE BY SILENCE OR EXERCISE OF DOMINION.
(1) Where an offeree fails to reply to an offer, his silence and inaction operate as an acceptance in the following cases and in no others:
(a) Where the offeree with reasonable opportunity to reject offered services takes the benefit of them under circumstances which would indicate to a reasonable man that they were offered with the expectation of compensation.
(b) Where the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer.
(c) Where because of previous dealings or otherwise, the offeree has given the offeror reason to understand that the silence or inaction is intended by the offeree as a manifestation of assent, and the offeror does so understand.
(2) Where the offeree exercises dominion over things which are offered to him, such exercise of dominion in the absence of other circumstances showing a contrary intention is an acceptance. If circumstances indicate that the exercise of dominion is tortious the offeror may at his option treat it as an acceptance, though the offeree manifests an intention not to accept.
Restatement of Contracts § 72 (1932). See 1 A. Corbin, Contracts §§ 72, 73 (1953); 1 S. Williston, Contracts § 91 (3rd ed. W. Jaeger 1957).

Appellant's suggestion that he and Mc-Niece of Industrial were involved in a financing scheme, interference with which is actionable under part (2) of *Bradkin, supra,* finds no support in the record. Further, the only written agreement, pursuant to part (1) of *Bradkin, supra,* stated that appellant accepted the Ultra stock as full payment for the sale of Avis's stock *and* of Industrial's treasury stock. Note 3 *supra.*

Because appellant has failed to demonstrate compliance with the Statute of Frauds, we affirm.