**Peter BRONNER, Plaintiff,**

v.

**PARK PLACE ENTERTAINMENT CORPORATION, Defendant.**

**No. 00 CIV. 9459(CM).**

United States District Court, S.D. New York.

March 28, 2001.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

McMAHON, District Judge.

Plaintiff Peter Bronner seeks a judgment against defendant Park Place En-

tertainment Corporation ("Park Place") declaring that an oral Commission Agreement entered into between them is valid and binding. Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. Defendant contends that the Agreement is barred by the Statute of Frauds, and that its terms are so vague and uncertain as to render them unenforceable.

For the reasons stated below, defendant's motion to dismiss is granted.

## FACTUAL BACKGROUND

All factual allegations are taken from the Complaint, and all well-pleaded facts are presumed to be true.

Beginning in the early 1990s, Bronner engaged in numerous transactions with the St. Regis Mohawk Indian Nation ("the Mohawks"), and acquired familiarity with the objectives of their Tribal Council and the business culture of the Mohawks.

In November 1999, Bronner received information that the Mohawks were close to finalizing agreements that would allow them to operate casinos at a site at Monticello, New York, in Sullivan County. He telephoned Arthur Goldberg, the President and CEO of Park Place, to discuss the prospect of Park Place and the Mohawks working together to develop casino resorts in Sullivan County.

Bronner and Goldberg discussed a commission for Bronner for his assistance in introducing Park Place to the Mohawks and for facilitating negotiations between them. Bronner alleges that Goldberg orally agreed to pay him 2% of the gross revenues derived from deals consummated between Park Place and the Mohawks resulting from Bronner's introduction ("the Commission Agreement").

Bronner then arranged for a telephone conference between Goldberg and a member of the Mohawk Tribal Council on or about November 22, 1999. They discussed possible casino resort development initiatives in the Mohawk nation itself, in Monticello, and at the Kutsher's Country Club.

Subsequent to the November 22 conversation, Bronner arranged a face-to-face meeting between Park Place and the Mohawks at Massena, New York, on November 24, 1999. Goldberg invited Bronner to travel with him to Massena on his private jet. The Complaint alleges that during the flight, the two discussed how the 2% commission would be paid to Bronner through Noramvest, an entity established by Sylvia Poorth, one of Bronner's associates. Goldberg proposed this arrangement because Park Place had determined, as a result of a "compliance review," that Bronner was an unsuitable partner. They also agreed that the term of the Commission Agreement would be seven years—to coincide with the Mohawk's understanding that the relationship with Park Place would last for an initial period of seven years. Bronner and Park Place never executed a written Commission Agreement.

The face-to-face meeting on November 24 spawned ongoing negotiations between Park Place and the Mohawks, which culminated in the conclusion of an agreement on or about April 14, 2000 ("the April 14 Agreement"). The April 14 Agreement provided that Park Place would assist the Mohawks in developing the casino sites in return for the right to manage the casino resorts ultimately developed.

Subsequent to the November 24 meeting, Bronner and Poorth attempted to meet with Park Place's General Counsel, Clive Cummis, to reduce the Commission Agreement to a written legal instrument. On or about November 29, 1999, Bronner sent a letter to Cummis outlining the spe-

cific terms of the Commission Agreement. Cummis did not respond to that letter or other efforts to reach him.

In January 2000, Poorth was advised in writing that she had not passed Park Place's "compliance review" and that Park Place would not enter into any Commission Agreement with her.

Poorth requested information from Park Place regarding the compliance review and its finding that she was "unsuitable," but Park Place did not provide her any information. Subsequently, Cummis called Poorth to tell her that her services were no longer necessary.

Plaintiff argues that the terms of the oral agreement were reduced to a writing in a letter from Bronner to Park Place on November 29, 2000. That letter stated, in pertinent part:

> For the record I want to confirm the various conversations I had with Arthur and you on the plane to the Mohawk Nation. As you recall Arthur suggested, and we all agreed, that Sylvia Poorth/Noramvest would be the ideal person/entity to receive the commission agreement from Park Place in the amount of 2% (two percent) of the gross revenues for the life of your contract with the Mohawk Nation.
>
> I expect you to receive a 7 (seven) year contract for the Upstate, Monticello/Kutshers, or where ever else you wind up building this casino project.

(Compl. at Ex. B.)

Because Park Place did not object to the letter until months after Bronner had served his usefulness, plaintiff seeks a declaration that the agreement is valid and binding. Defendant responds that the Complaint should be dismissed because the alleged agreement is barred by the Statute of Frauds, and, in the alternative, that its terms are so vague and uncertain as to render them unenforceable.

## DISCUSSION

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. The Court is required to read a complaint generously, drawing all reasonable inferences from the complaint's allegations. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." *Frasier v. General Electric Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). The Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash,* 976 F.2d 86, 87 (2d Cir.1992) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

1. **The Alleged Oral Agreement is Unenforceable Under the Statute of Frauds**

New York's General Obligations Law provides that a contract to pay compensation for services rendered in procuring the introduction of a party to a business transaction, or in assisting in negotiating or consummating a business transaction, is void unless it is in a writing signed by the party to be charged. Section 5–701(a)(10) provides, in pertinent part:

> a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged

therewith, or by his lawful agent, if such agreement, promise or undertaking:

. . .

10. Is a contract to pay compensation for services rendered in negotiating a loan, or in *negotiating* the purchase, sale exchange, renting or leasing of any real estate or interest therein, or of *a business opportunity,* business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creation of a partnership interest. *"Negotiating" includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction.* This provision shall apply to a contract implied in fact or in law to pay reasonable compensation. . . .

N.Y. Gen. Obl. Law § 5–701(a)(10) (emphasis added).

Courts have routinely invalidated oral agreements under § 5–701 where they are not commemorated by a writing signed by the party to be charged. In *Freedman v. Chemical Construction Corp.,* 43 N.Y.2d 260, 266, 401 N.Y.S.2d 176, 372 N.E.2d 12 (1977), plaintiff brought an action to enforce an alleged oral agreement to pay him a 5% fee for his participation in obtaining for defendant a $41 million construction contract in Saudi Arabia. *Id.* at 262, 401 N.Y.S.2d 176, 372 N.E.2d 12. He arranged a meeting with defendant Chemical, and also negotiated with Saudi officials at Chemical's request. *Id.* at 263, 401 N.Y.S.2d 176, 372 N.E.2d 12. As a result of the negotiations, Chemical was awarded the contract, and plaintiff asserted (an assertion that Chemical denied) that he was to be paid a fee of 5%, or $2.05 million for his services. *Id.* There was no writing of any kind to evidence the agreement.

Upholding summary judgment for the defendant, the New York Court of Appeals relied on Section 5–701 to conclude that a writing was required for an agreement to compensate a party for negotiating a business opportunity. *Id.* Without resolving the scope of what constitutes a "business opportunity," the court concluded that where an intermediary's activity is to provide "know-how" or "know-who" in bringing about an enterprise of some complexity between principals, "the statute [requiring a writing] is entitled to be read both in accordance with its plain meaning, its evident purpose, and to accomplish the prevention of the mischief for which it was designed." *Id.* at 267, 401 N.Y.S.2d 176, 372 N.E.2d 12.

The court in *Greystone Partnerships Grp., Inc. v. KLM Royal Dutch Airlines,* 815 F.Supp. 745 (S.D.N.Y.1993) came to a similar conclusion. Plaintiff Greystone alleged that it engaged in extensive negotiations with KLM Royal Dutch Airlines ("KLM"), and that KLM agreed to pay Greystone a 3% commission if it could facilitate a sale or lease of an airplane to Lauda–Air. *Id.* at 749. The parties never entered into a written agreement. On the day Lauda–Air signed an agreement to lease the airplane from KLM, Greystone's president sent KLM a fax saying that he was "glad that the sale has resulted through my efforts" and reiterated his expectation of a 3% fee. *Id.* at 750. KLM acknowledged Greystone's role in the sale, but contended that Greystone was not involved in the closing of the transaction and therefore not entitled to a commission. *Id.*

Following *Freedman,* the court concluded that this was the type of case Section 5–701 was meant to address, and held that plaintiff's breach of contract claim was barred by the Statute of Frauds. Because the case involved an asset offered to be sold for $80,000,000 and an alleged brokerage fee worth 3% of that sale, or $2,400,000, the court noted that "[t]hese

are not facts upon which oral contracts are likely made." *Id.*

The size of the deal and the significant potential for mischief make this case analogous *Freedman* and *Greystone.*[1] Bronner alleges that he used his "know how" (the workings of the Mohawks) and "know who" (the principals of both parties) to bring Park Place and the Mohawks together. *See Freedman,* 43 N.Y.2d at 266, 372 N.E.2d 12. He arranged a telephone conference between members of the Mohawk Tribal Counsel, and arranged and attended a November 24, 1999 meeting between Park Place and Mohawk Nation officials. At least partially as a result of his efforts, he contends, Park Place and the Mohawks signed an agreement on April 14, 2000. In short, plaintiff negotiated a significant business opportunity for Park Place by assisting in the consummation of the transaction through the procurement of introductions. Section 5–701 protects parties in this situation from "mischief" by requiring that such commission agreements be in writing, and subscribed the party to be charged (i.e. Park Place). It is undisputed that Park Place did not sign any Commission Agreement.

## 2. Plaintiff's Attempt to Circumvent the Statute of Frauds is Unavailing

Seeking to survive defendant's Statute of Frauds defense, plaintiff responds with three arguments. He contends that: (a) the November 29 memorandum is a writing sufficient to satisfy the Statute of Frauds; (b) Park Place's silence upon receipt of the letter is the equivalent of accepting the terms of the document; and (c) part performance on the oral agreement serves to take it outside the Statute

of Frauds. I will address, and reject, each in turn.

### (a) November 29 Memorandum is Insufficient to Satisfy the Statute of Frauds

■ Plaintiff alleges that the November 29 letter from Bronner to Clive Cummins, legal counsel to Park Place, sets forth the substance of the Commission Agreement. Under New York law, even if an oral agreement is not reduced to a formal writing, a series of correspondence and memoranda can take an otherwise unenforceable agreement out of the Statute of Frauds. *Crabtree v. Elizabeth Arden Sales Corp.,* 305 N.Y. 48, 110 N.E.2d 551 (1953) (holding that a combination of signed and unsigned documents could evidence a contract for purposes of overcoming the requirements of the Statute of Frauds); *Aloisi v. Coin Phones, Inc.,* 157 A.D.2d 688, 688, 549 N.Y.S.2d 787, 787 (2d Dep't 1990) ("Although the consulting agreement (was) not embodied in a single written memorandum, appellant submitted various written documents which, when pieced together, are sufficient to satisfy the requirements of the Statute of Frauds.")

■ However, it is also is well established that unsigned writings prepared by a plaintiff, without more, do not suffice to bind a defendant. *Crabtree,* 305 N.Y. at 56, 110 N.E.2d 551; *Karlin v. Avis,* 457 F.2d 57, 62 (2d Cir.1972). At least one writing, "the one establishing a contractual relationship between the parties, must bear the signature of the party to be charged (or his authorized agent), while the unsigned document must on its face refer to the same transaction as that set

---

**1.** According to defendant, a casino deal between the Mohawk Nation and Park Place likely would generate millions of dollars in annual gross revenues. (Def. Mem in Supp. of Mot. to Dismiss at 8.)

forth in the one that was signed." *Crabtree,* 305 N.Y. at 56, 110 N.E.2d 551.

Park Place had no hand in drafting the November 29 letter, and none of its agents signed it. Plaintiff refers to no other documents signed by agents of Park Place that contained similar terms. The letter from Bronner alone therefore does not satisfy the requirements of the Statute of Frauds.

### (b) Park Place's Silence Upon Receiving the Memorandum Does Not Take the Case Outside the Statute of Frauds

■ Plaintiff's argument that defendant agreed to the November 29 letter by failing to respond to it also fails. The Statute of Frauds would serve no purpose if Park Place's silence could elevate the November 29 letter to a writing sufficient to satisfy its requirements. Plaintiff has cited cases that support the proposition that silence can equal acceptance in certain circumstances. See *Karlin,* 457 F.2d at 61–62; *Tanenbaum Textile Co. v. Schlanger,* 287 N.Y. 400, 404, 40 N.E.2d 225 (1942). Those cases do not support plaintiff's argument that defendant's silence can serve to take plaintiff's letter outside the Statute of Frauds. In *Karlin,* the Second Circuit rejected plaintiff Karlin's argument that Avis was under a duty to respond to plaintiff's letters proposing a finder's fee, and held that the defendant could not be charged with the obligations under the Statute of Frauds. The court noted that an "offeror has no power to transform an offeree's silence into acceptance when the offeree does not intend to accept the offer." *Id.* Similarly, in *Tanenbaum,* 287 N.Y. 400, 404, 40 N.E.2d 225 (1942), the Court of Appeals held that absent a duty to speak, a party's silence cannot be translated into an acceptance of an offer to contract. Accordingly, invoices given by a seller to a buyer that contained a statement that all controversies were to be settled by arbitration did not satisfy a statutory requirement that arbitration agreements be in writing. *Id.*

Section 5–701 is clear that oral finder's fee agreements are void. The statute would be meaningless if hopeful finders like Bronner could avoid that proscription by merely sending a letter purporting to confirm an oral agreement. This Court can find no case—and indeed none was cited by plaintiff—to support that proposition.

### (c) Part Performance Exception to the Statute of Frauds Does Not Apply

Plaintiff also argues that the part performance doctrine operates to take this oral contract outside the Statute of Frauds.

■ The doctrine of part performance "may be invoked only if plaintiff's actions can be characterized as unequivocally referable to the agreement alleged. [T]he actions alone must be unintelligible or at least extraordinary, explainable only with reference to the oral agreement." *Anostario v. Vicinanzo,* 59 N.Y.2d 662, 664, 463 N.Y.S.2d 409, 450 N.E.2d 215. The acts performed must be clear, certain and definite to remove an oral agreement from the Statute of Frauds. *See Korff v. Pica Graphics,* 121 A.D.2d 511, 512, 504 N.Y.S.2d 17 (2d Dep't 1986).

■ Plaintiff's contact with the Mohawks and Park Place cannot be said to be unequivocally referable to the alleged oral agreement, nor are they explainable only with reference to that agreement. *See Anostario,* 59 N.Y.2d at 664, 463 N.Y.S.2d 409, 450 N.E.2d 215. Persons having no formal agreement attempt to broker arrangements all the time in the hope that some reward will be forthcoming. While a

purported oral agreement between plaintiff and defendant can be said to lend some significance to plaintiff's willingness to reach out to the Mohawks, it is equally explainable as preparatory to a future, or continuing, business relationship. There is nothing unintelligible about someone in Bronner's position doing what he did—even in the absence of any agreement. The doctrine of partial performance therefore does not take this case outside of the Statute of Frauds.[2]

## CONCLUSION

Because Bronner's alleged agreement with Park Place to receive a commission for making an introduction to the Mohawk Nation falls squarely within the parameters of Section 5–701, it must be in writing to be enforceable. The November 29 letter—drafted by Bronner, sent by Bronner, and ignored by Park Place—is insufficient to satisfy that requirement. To survive a Statute of Frauds defense, plaintiff must claim that Park Place—as the party against whom such a document would be charged—has signed or drafted the letter. Plaintiff has not done this, and the law does not permit Park Place's decision to ignore the letter to be construed as an acceptance of its terms. Finally, plaintiff's actions in setting up a meeting between Goldberg and the Mohawks is not unequivocally referable to the agreement to take this outside the Statute of Frauds under the exception for part performance. As such, the alleged Compensation Agreement is unenforceable under the Statute of Frauds, and defendant's motion to dismiss is granted.

The Clerk is directed to close the case.

2. Defendant also charges that the alleged agreement fails for vagueness and indefiniteness. Because this Court has concluded that any oral agreement between Park Place and

This constitutes the decision and order of the Court.

Bronner is unenforceable under the Statute of Frauds, I decline to reach the question of whether the terms of the contract satisfy the doctrine of definiteness.