**AG LIMITED d/b/a The Arundel Group, Plaintiff,**

v.

**LIQUID REALTY PARTNERS, LLC, Defendant.**

**No. 05 Civ. 9370(JSR).**

United States District Court, S.D. New York.

Sept. 15, 2006.

---

Craig Justin Albert, Jocelyn Lee Jacobson, Reitler Brown & Rosenblatt, LLC, Todd Andrew Higgins, Crosby & Higgins, LLP, New York, NY, for Plaintiff.

William J.F. Roll, III, Panagiotis Katsambas, Vikram Sidhu, Shearman & Sterling LLP, New York, NY, for Defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Plaintiff AG Limited d/b/a The Arundel Group ("Arundel") brings various claims seeking, in essence, compensation for its efforts relating to the private equity acquisition of Buffalo Grill S.A., a French-owned chain of Western-themed restaurants. Arundel, an investment bank, collaborated with defendant, Liquid Realty Partners, LLC ("LRP") in Spring 2005 regarding the Buffalo Grill acquisition. Def. Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ¶ 15; Pl. Counter–Statement of Disputed and Additional Facts ¶ 15. During this time, Arundel provided certain information to LRP regarding Buffalo Grill and its owner, at least some of which LRP passed along to a third party, Colony Capital ("Colony"). *See, e.g.,* Affirmation of Todd A. Higgins In Opp. to Def.'s Mot. for Summ. J., Jul. 19, 2006 ("Higgins Aff."), Exh. B (Exhibits to Deposition of Scott Landress ("Landress Dep. Exh.")), Exhs. 15, 16. Colony eventually acquired Buffalo Grill.

Following dismissal with prejudice of plaintiff's claims for tortious interference with prospective economic advantage and misappropriation of a business opportunity, *see* Order, Jan. 23, 2006, and the timely re-pleading of its common law fraud claim, *id.,* Arundel's claims were narrowed to common law fraud (Count 1), breach of contract (Count 2), and quantum meruit (Count 3). Defendant moved for summary judgment, and by Order dated August 15, 2006, the Court granted the motion as to Count 2 and denied the motion as to Counts 1 and 3. This Memorandum Order gives the reasons for that ruling.

As to plaintiff's contract claim, Arundel alleges that LRP's founder, Scott Landress, signed and faxed to plaintiff at its Paris office an engagement letter dated May 16, 2005 that served to "memorialize[ ]" a prior agreement between Landress and Arundel's president, Jack Worthington, regarding Arundel's fees. Higgins Aff., Exh. C (Worthington Dep.) at 295; Pl. Counter–Statement of Disputed & Additional Facts ¶ 73. The engagement letter provided, *inter alia,* that LRP would agree to pay a cash success fee "[i]f, prior to [May 16, 2006], LR, one of its partners, or in partnership with other investors ... consummates an investment transaction involving Buffalo

Grill or any of its related companies." Higgins Aff., Landress Dep. Exh. 21, at ¶ 2a.[1] Arundel now asserts that it is entitled to this success fee because Colony was LRP's partner.

Plaintiff admits, however, that it cannot produce the signed letter, and, not surprisingly, Landress denies ever having signed or faxed it. Declaration of Panagiotis Katsambas, July 7, 2006 ("Katsambas Decl."), Exh. B (Landress Dep.), at 34, 217. Defendant therefore argues that it is entitled to summary judgment on this claim either because the alleged "contract" does not satisfy the statute of frauds, or because, even assuming there is sufficient written evidence of a binding agreement between the parties, the evidence fails to show defendant breached that agreement.

■ There is no reason to reach the merits of the latter argument, as the former requires dismissal of plaintiff's contract claim. N.Y. Gen. Oblig. Law provides that

> [e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith ... if such agreement, promise or undertaking: ... [i]s a contract to pay compensation for services rendered in ... negotiating the purchase, sale exchange ... of a business opportunity, [or] business, its good will, inventory, fixtures or an interest therein.... "Negotiating" includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction.

N.Y. Gen. Oblig. Law § 5–701(a)(10). The "note or memorandum" required need not itself be a contract (else the statute of frauds would not be at issue) and may, in fact, take the form of several notes or memoranda, so long as the multiple writings are "connected with one another either expressly or by the internal evidence of subject-matter and occasion" and at least one of them is signed by the party to be charged. *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 110 N.E.2d 551, 553 (1953) (Fuld, J.) (internal quotation omitted). The writing or writings offered, however, must set forth all material terms of the agreement, "either expressly or by reasonable implication," *Hawley Fuel Coalmart, Inc. v. Steag Handel GmbH*, 796 F.2d 29, 33 (2d Cir.1986) (internal quotation omitted), and must provide "evidence of [the defendant's] assent to paying the fee" purportedly agreed upon, *Karlin v. Avis*, 457 F.2d 57, 61 (2d Cir.1972). Unsigned writings prepared by plaintiff will not bind a defendant. *Id.* at 62.

■ Here, plaintiff argues that "there is substantial evidence in the record for a jury to conclude that Liquid Realty signed the May 16, 2005 engagement letter." Pl. Mem. in Opp. to Def.'s Mot. for Summ. J. 17. However, resort to such evidence to show the existence of a writing sufficient to satisfy the statute of frauds arises only after there has been an adequate explanation of the loss of the original. *See, e.g., C.I.F. Prods., Inc. v. Burlington Coat Factory Warehouse Corp.*, 881 F.Supp. 104, 106 (S.D.N.Y.1995); *Nicosia v. Muller*, 229 A.D.2d 964, 965, 645 N.Y.S.2d 385 (4th Dept. 1996); *but see Matter of Talco Contractors, Inc. v. New York State Tax Comm'n*, 140 A.D.2d 834, 835, 528 N.Y.S.2d 219 (3d Dept.1988). Plaintiff here admits that neither party ever saw, possessed or, more importantly, even looked for a signed copy of the engage-

---

1. The engagement letter also provided for an hourly consulting fee, but plaintiff here makes claims only for the success fee.

ment letter. Katsambas Decl., Exh. A (Worthington Dep.) 294–97. Accordingly, the Court finds plaintiff has provided no adequate explanation as to its inability to produce the signed engagement letter and that, in the absence of such, admission of parol evidence to prove its existence is barred. *See Posner v. Rosenbaum*, 240 A.D. 543, 547, 270 N.Y.S. 849 (1st Dept. 1934) ("The note in writing, which is sufficient to take a parol title out of the Statute of Frauds and Perjuries, must be proved.... If it cannot be produced, it must be shown first, to have existed; next, that it is lost, which *may be inferred from diligent but unsuccessful search for it* ....'") (quoting *Irwin v. Irwin*, 34 Pa. 525, 529 (1859) (emphasis added)); 6 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 1004.11[1] (Joseph M. McClaughlin ed., 2d ed.2006) (judges require evidence of an unsuccessful search to prove lost writing); *id.* § 1008.04[3] (question of loss of original writing one to be resolved by judge).

■ Alternatively, plaintiff proffers five sets of writings that it claims, taken together, evidence the parties' agreement:

1. April 19, 2005 emails between Worthington and Landress, in which Worthington wrote to Landress, "Our fees are:—US$250/hour management consulting fee with a US$20,000 retainer ... and a success fee of double Lehman Formula on enterprise value," and Landress responded simply, "Define 'double Lehman Formula'?" Higgins Aff., Landress Dep. Exh. 8;

2. May 12, 2005 emails from Landress to a Colony employee, in which Landress referred to Arundel as its "banker" in passing along various information produced by Arundel to Colony, *id.* Exhs. 15, 16;

3. A confidentiality agreement dated May 13, 2005 between LRP and Colony regarding the Buffalo Grill transaction, which did not mention Arundel whatsoever, *id.* Exh. 23;

4. A "confidential phase I deal memo re: Project Bison," attached to a May 27, 2005 email from Landress to various LRP colleagues, stating, in relevant part, "Liquid Realty sourced this deal through a professional relationship with the Arundel Group, a French investment bank, and Wargny, who cover closely BG and are working in tandem with Arundel on our behalf on a contingent basis, scope of assignment and success fee to be negotiated," *id.* Exh. 36; and

5. An August 16, 2005 email from Landress to Worthington, referring to an offer by LRP to pay Arundel a 200,000 success fee, but explicitly characterizing the offer as "Liquid Realty's only proposal to compensate Arundel" that was "discussed verbally for the first and only time last month," *id.* Exh. 43.

However, these writings, even taken together with the unsigned engagement letter, do not come close to demonstrating LRP assented to Arundel's requested fee. While these writings do demonstrate that LRP and Arundel had entered into some sort of relationship regarding the Buffalo Grill transaction, they nowhere evidence LRP's assent to pay the cash success fee on the terms set forth in the April 19, 2005 email and the engagement letter. The only documents that state the material terms of the cash success fee were drafted by plaintiff and went unsigned by defendant, and none of the four other writings even remotely refers to an agreement having been reached as to a success fee. In fact, several of them on their face indicate

the opposite: that the amount of any cash success fee as well as the circumstances under which one would be awarded, while evidently contemplated by both parties, had yet to be agreed upon.[2]

While Count 2 must therefore be dismissed, summary judgment is inappropriate as to Counts 1 and 3. The gist of Arundel's fraud allegations is that LRP knowingly and falsely told Arundel that it was working as an investment partner with Colony and that the two together would work with Arundel and another entity, Apex Restaurant Group ("Apex"), to acquire Buffalo Grill, while, in truth, Colony had told LRP from the start that it was planning to proceed independently with the acquisition. Arundel alleges LRP made these misrepresentations so that Arundel would continue to send various proprietary information to LRP and would be prevented from completing the transaction with other investors. LRP, for its part, admits that Colony never at any time indicated an interest in undertaking the Buffalo Grill acquisition in concert with Arundel and Apex. Tr., Jun. 13, 2006, at 28–29.

To prove its fraud claim, Arundel must show (1) that LRP made a materially false representation; (2) with the intent to defraud Arundel; (3) that Arundel reasonably relied upon the representation; and (4) that Arundel suffered damage as a result of its reliance. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 186–87 (2d Cir. 2004) (internal quotation omitted). LRP contends the claim should be dismissed because Arundel has failed to adduce evi-

dence as to either the second or fourth elements, and, alternatively, that the fraud claim is improperly predicated on Arundel's breach of contract allegations.

■■■ The Court finds, however, that Arundel plainly alleges intentional misrepresentations in its complaint and that the record is replete with evidence that, at the very least, tends to support Arundel's assertion that LRP was knowingly lying to Arundel regarding Colony's interest in the deal. Amended Complaint ¶¶ 39–40; *e.g.*, Higgins Aff., Landress Dep. Exhs. 31, 33, 37, 38. Similarly, although the evidence of harm to plaintiff presented in the summary judgment record is, in some respects, on the borderline between factual allegation and sheer surmise, the Court finds that, on the whole, the various allegations regarding both out-of-pocket expenses and lost opportunity damages, *see, e.g., id.* Landress Dep. Exh. 22; *id.*, Exh. C (Worthington Dep.), at 127, 189, are sufficient to present a genuine issue of fact as to the extent of plaintiff's harm.[3] Finally, defendant's purported misrepresentations regarding Colony's interest in collaborating with Arundel and Apex are unrelated to any alleged contractual duty, and, therefore, Arundel's fraud claim is properly premised on allegations collateral and extraneous to the terms of the alleged contract between the parties. *See Bridgestone/Firestone, Inc. v. Recovery Credit Svcs., Inc.*, 98 F.3d 13, 20 (2d Cir.1996).

■■ As for plaintiff's quantum meruit claim, Arundel has not only properly pled the claim as one for quantum meruit, but

---

**2.** To the extent that plaintiff offers some or all of these documents as evidence of performance by LRP, the exception to the statute of frauds for part performance is inapplicable to N.Y. Gen. Oblig. Law § 5–701. *Pevner v. Ensler*, 309 A.D.2d 722, 722, 766 N.Y.S.2d 183 (1st Dept. 2003).

**3.** Accordingly, the Court found no need to consider the additional discovery materials submitted at oral argument that were not included in the parties' motion papers.

also has produced more than sufficient evidence as to each required element to survive summary judgment. *See LeBoeuf, Lamb, Greene & MacRae, LLP v. Worsham,* 185 F.3d 61, 66 (2d Cir.1999) (setting forth elements of quantum meruit claim); *see* Higgins Aff., Landress Dep. Exhs. 8, 15, 16, 21, 24, 26, 28, 29.[4]

Accordingly, the Court hereby affirms its August 15 Order granting defendant's motion for summary judgment as to Count 2 and denying summary judgment as to Counts 1 and 3. Counsel are reminded that trial of these remaining claims will commence on November 13, 2006 at 9:00 a.m.

SO ORDERED.

---

**4.** The statute of frauds also applies to claims asserted in quantum meruit, *see, e.g., Morris Cohon & Co. v. Russell,* 23 N.Y.2d 569, 575–76, 297 N.Y.S.2d 947, 245 N.E.2d 712 (1969), but defendant has not raised the statute of frauds as to this claim and, therefore, has waived the defense.